387 So.2d 89 (1980)
STATE of Mississippi ex rel. Bill ALLAIN, Attorney General of the State of Mississippi
v.
BOARD OF TRUSTEES OF INSTITUTIONS OF HIGHER LEARNING, Verner S. Holmes, President, Bobby L. Chain, Vice President, E.E. Thrash, Executive Secretary, R.W. Harrison, Charles C. Jacobs, Dr. John R. Lovelace, Boswell Stevens, Travis E. Parker, Denton Rogers, Betty B. Shemwell, W.M. Shoemaker, Miriam Q. Simmons, Betty S. Williams: Gulf Coast Research Laboratory; Slaughter & Allred, P.A., and Starks Contracting Co., Inc.
No. 51984.
Supreme Court of Mississippi.
August 6, 1980.
Bill Allain, Atty. Gen. by Donald Clark, Jr., Sp. Asst. Atty. Gen., Jackson, for appellant.
Roberts & Easterling, M.M. Roberts, Hattiesburg, Jacobs, Griffith, Pearson, Eddins & Povall, Charles C. Jacobs, Jr., Cleveland, for appellees.
Before ROBERTSON, LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This cause originated in the Chancery Court of Jackson County and involves a controversy between the Mississippi State Building Commission and the Board of Trustees of State Institutions of Higher Learning. The cause reaches this Court on appeal from a decree of the chancellor sustaining appellees' motion to dissolve a temporary injunction and dismissing the bill of complaint. Appellee, Board of Trustees, cross-appeals on the ground hereinafter discussed.
*90 At the outset, we state that the narrow issue involved in the appeal is the power of the Board of Trustees to use "self-generated funds" [as that term is hereafter defined] to construct facilities at the institutions under its supervision without the approval of and control by the State Building Commission.
The history of the cause of action began when the Board of Trustees advertised for bids and entered into a contract for the construction of a building at the Gulf Coast Research Laboratory located in Jackson County, Mississippi. The State Building Commission, on relation of the Attorney General, filed its bill of complaint for a temporary and a permanent injunction prohibiting the Board of Trustees from proceeding with the project without conforming to the statutes setting out the duties and obligations of the State Building Commission. A temporary injunction was issued after which appellees filed their petition to dissolve. After a hearing the temporary injunction was dissolved and the bill of complaint dismissed as stated above. The Building Commission appeals.
The Gulf Coast Research Laboratory was created by the Legislature in 1950 "to promote the study and knowledge of science, including the natural resources of the State of Mississippi, and to provide for the dissemination of research findings and specimens from the Gulf Coast area." The Legislature further provided that "the Gulf Coast Research Laboratory shall be under the control and supervision of the Board of Trustees of State Institutions of Higher Learning, and the powers of said Laboratory shall be vested in and its duties performed by said Board." Among its other activities connected with the education of students in the field of science, the Research Laboratory was authorized to perform services for remuneration for companies and other entities in need of such research facilities. The "self-generated funds" to be used in the construction of the building in question at the Research Laboratory were secured from these services rendered to third parties by the Laboratory. None of the funds involved here were legislatively appropriated or are in any manner controlled by agencies other than the Board of Trustees.
The chancellor held that the Board of Trustees had the power to use the funds in question to construct the building; that this power included the right to secure bids and enter into a contract with the lowest and best bidder without securing the approval and supervision of the State Building Commission.
The basis of the chancellor's decree was Mississippi Code Annotated section 37-101-15 (1972). This is the statute that sets out the "general powers and duties of the Board" and provides in part:
(a) The board of trustees of state institutions of higher learning shall succeed to and continue to exercise control of all records, books, papers, equipment, and supplies, and all lands, buildings, and other real and personal property belonging to or assigned to the use and benefit of the board of trustees formerly supervising and controlling the institutions of higher learning named in section 37-101-1. The board shall have and exercise control of the use, distribution and disbursement of all funds, appropriations and taxes, now and hereafter in possession, levied and collected, received, or appropriated for the use, benefit, support, and maintenance or capital outlay expenditures of the institutions of higher learning, including the authorization of employees to sign vouchers for the disbursement of funds for the various institutions, except where otherwise specifically provided by law.
The chancellor specifically was impressed with the power of the Board of Trustees regarding "capital outlay expenditures." He did not discuss or base his opinion on section 213-A of the Mississippi Constitution of 1890, under which the Board of Trustees was founded and receives its constitutional authority. This is the subject of the cross-appeal by the Board of Trustees. It contended at trial, and contends here, that the provision of the Constitution made *91 the Board autonomous and that this Court should hold in the cross-appeal that the Board of Trustees does have autonomy due to its status as a constitutionally created board and the language of the constitutional provision.
A brief history of the Board of Trustees and the Building Commission would be helpful. At the outset, it is interesting to note that the constitutional provision making the Board of Trustees a constitutional body was approved by the Legislature and the vote of the citizens in 1944. The legislative statute creating the Building Commission was adopted the same year. In 1938, the Legislature had passed a temporary building commission act which set up a commission for purposes of doing specific building activities as designated by the Legislature. By the 1944 statutes, the Legislature created a permanent Building Commission and set out its powers and duties [Mississippi Code Annotated sections 31-11-3, et seq. (1972)]. Section 31-11-3, granting the "powers and duties" of the Building Commission, set out specific buildings to be constructed by the Commission, including a state office building, Mississippi State Penitentiary Hospital, a Mississippi Central Market, a gymnasium at Columbia Training School and other specific duties. It went further, however, and set out "general" duties, among which was "to build suitable plants or buildings for the use and housing of any state school or institutions, including the building of plants or buildings for new state schools or institutions, as provided for by the Legislature." (Emphasis supplied).
The preamble to "powers and duties" of the Commission provides as follows:
The commission, for the purpose of carrying out the provisions of this chapter, in addition to all other rights and powers granted by law, shall have full power and authority to employ and compensate such architects or other employees necessary for the purpose of making inspections, preparing plans and specifications, supervising the erection of any buildings, and making any repairs or additions as may be determined by the commission to be necessary. Said commission shall have entire control and supervision of, and determine what, if any, buildings, additions, repairs or improvements are to be made under the provisions of this chapter.
(a) The commission shall have full power to erect buildings, make repairs, additions or improvements, and buy materials, supplies and equipment for any of the institutions or departments of the state. In addition to other powers conferred, the commission shall have full power and authority as and when directed by the legislature, or when funds have been appropriated for its use for such purposes, to: ...
We now direct our attention to section 213-A of the Constitution. A general history of the Institutions of Higher Learning reveals that for many years those institutions had been "political footballs" of the politicians then in power. At one time, the accreditation was taken from most of the institutions because of the action of whomever was in power politically at that time. By the year 1944, the people of the state and the members of the Legislature were ready to cure the previous political diseases. Consequently, section 213-A was approved by the Legislature and the electorate and became a part of the Constitution without subsequent change or amendment. The part of this constitutional section pertaining to the present case is as follows:
The State institutions of higher learning now existing in Mississippi, to wit . . and any others of like kind which may be hereafter organized or established by the State of Mississippi, shall be under the management and control of the Board of Trustees to be known as the Board of Trustees of state institutions of higher learning ...
Therefore, we have a constitutionally created state agency with the constitutional provision giving the board "management and control" of the institutions under its supervision. This constitutional authority has been implemented and supplemented by legislative statutes, including Code section 37-101-15 discussed above. As hereinbefore *92 stated, this appeal is concerned with the question of the Board of Trustees' use of "self-generated funds." This term is generally defined as any funds secured by the individual institution through its own individual activities and not by legislative appropriation. For instance, the term would include such activities as the sales of commodities raised on university property, library fees, diploma fees, gifts and donations, and income received from property owned by that institution. An example of this is income received from the sale of timber and execution of oil leases involving lands owned by a university. The record reveals that the Board of Trustees has in actuality controlled such funds as these over the years. According to the first paragraph of appellants' brief, the building now in question at the Gulf Coast Research Laboratory has, in ordinary language, brought the matter to "a head." The brief begins:
The attorney general initiated this litigation in order to settle an issue which has for many years simmered behind closed doors in state government. The issue is simple, yet its resolution will have a profound impact on the operation of government of this state.
We agree that the issue might be simple but we do not know how much simmering has been done behind closed doors. All we can do is consider and interpret the constitutional and statutory directives before us regarding the agencies.
Admittedly any funds appropriated by the Legislature for the construction of facilities under the "management and control" of the Board of Trustees fall within the statutes controlling the powers and duties of the State Building Commission. An examination of the various statutes gives some indication of how the question before us should be determined. A provision of Code section 37-101-15 describing the powers and duties of the Board of Trustees requires an annual report to the Legislature setting out that the Board shall "show how the money appropriated to the several institutions has been expended ..." The Board is also required to "keep the annual expenditures of each institution herein mentioned within the income derived from legislative appropriations and other sources ..." (Emphasis supplied).
We have already seen that Code section 31-11-3 stating the powers and duties of the Building Commission authorizes that agency to construct buildings at state schools or institutions "as provided for by the legislature." This section further provides that "the Commission is clothed with large discretionary powers and authority in the expending or allocation of any funds appropriated for expenditure under this chapter in order that the Commission may act in the interest of economy and sound business judgment." (Emphasis supplied).
The Supreme Courts of several states have had before them the question regarding the autonomy of college boards of trustees or boards of regents as they are usually called. A study of these cases and the constitutional provisions involved reveals different language in all constitutions. Some of them, however, are very similar to the Mississippi section in question. The cases primarily relied upon by appellee and cross-appellant Board of Trustees are: Board of Regents of the University of Nebraska v. Exom et al., 199 Neb. 146, 256 N.W.2d 330 (1977); Sprik v. Regents of University of Michigan, 43 Mich. App. 178, 204 N.W.2d 62 (1972); Regents of the University of Minnesota v. Lord, 257 N.W.2d 796 (Minn. 1977); Board of Regents of Higher Education v. Judge, 168 Mont. 433, 543 P.2d 1323 (1975); University of Utah v. Board of Examiners of State, 4 Utah 2d 408, 295 P.2d 348 (1956); Sterling v. Regents of University of Michigan, 100 Mich. 369, 68 N.W. 253 (1896).
The main thrust of the cases cited on the question of autonomy of the constitutional boards is the fact that they are in existence by reason of the constitution and not statute law. Although we have referred to the above cited cases and the question of autonomy of the boards under the various constitutions (an issue raised by appellee board), we do not reach that question in this case. We decide the issue as originally set out *93 merely under an interpretation of Section 213-A of the Constitution and the hereinbefore discussed statutes. This Court has the duty and authority to interpret the provisions of the Constitution as they apply to each individual question raised. State of Mississippi on relation of Jean D. Muirhead v. State Board of Election Commissioners et al., 259 So.2d 698 (Miss. 1972), cert. denied 409 U.S. 851, 93 S.Ct. 64, 34 L.Ed.2d 94; W. Horace Williams Co. v. Federal Credit Co. et al., 198 Miss. 111, 21 So.2d 582 (1945); University of Utah v. Board of Examiners of State of Utah et al., 4 Utah 2d 408, 295 P.2d 348 (1956).
It is our opinion that the chancellor correctly dismissed the petition of appellant for an injunction. Although his opinion was based solely on the statute [Code § 37-101-15], we hold that he should have gone further and based his decision on section 213-A of the Mississippi Constitution. Where the lower court reaches a correct decision, it is the policy and duty of this Court to affirm whether or not the decision was on correct or sufficient grounds. Taylor v. F. & C. Contracting Co., Inc. 362 So.2d 625 (Miss. 1978); Huffman v. Griffin, 337 So.2d 715 (Miss. 1976); Miller v. Miller, 173 So.2d 424 (Miss. 1965); Larry v. Moody, 242 Miss. 267, 134 So.2d 462 (1961).
In 1944 the Legislature and the people of the state had good reason to make the Board of Trustees a constitutional board and in not taking the same action in regard to the State Building Commission. Obviously good reasons justified placing the Institutions of Higher Learning under management and control of the constitutionally organized Board of Trustees.
It is clear to us, and we so hold, that the management and control of the constitutionally organized college board includes the management and control of "self-generated" funds that are the subject of this cause. As hereinbefore pointed out, the statutes involving both agencies indicate that the Legislature reserved only the management and control of funds legislatively appropriated to both agencies. The statutes giving powers and duties to the Building Commission do not override the powers created by the constitution.
In addition to the authority of the constitution, we hold that the chancellor was correct in basing his opinion on the provisions of Code section 37-101-15. It is our opinion that he should have based his decree on both grounds.
This case was considered by a conference en banc, and in the opinion of all the justices, we do not reach the broad question of whether or not the Board of Trustees is an "autonomous" board. To do so would require a consideration of questions beyond the primary question involved in this appeal. It necessarily follows that the cause is affirmed on both the direct and cross-appeals.
AFFIRMED ON DIRECT AND CROSS-APPEALS.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.