This appeal arises from a November 30, 1988, order of the Chancery Court for the First Judicial District of Hinds County granting the Board of Trustees of State Institutions of Higher Learning's motion for summary judgment, following our ruling on interlocutory appeal, Board of Trustees v. Van Slyke,510 So.2d 490 (Miss. 1987). While the Chancellor erred in finding that Van Slyke did not have standing to challenge the constitutionality of the Board of Trustees and its makeup, he properly considered the merits of Van Slyke's arguments in granting the motion for summary judgment. There being no genuine issues of material fact in dispute, we affirm *Page 874 
his finding that the Board of Trustees, as presently composed and operating, is constitutional.
 I.
This chapter in the protracted legal battle between former State Representative J.B. Van Slyke, Jr. and the Board of Trustees of State Institutions of Higher Learning (hereinafter "Board of Trustees") began on August 9, 1984, when Van Slyke wrote to Board Director, Dr. E.E. Thrash, seeking access to certain Board records pursuant to the Mississippi Public Records Act of 1983, Miss. Code Ann. § 25-61-1, et seq. He specifically sought access to those documents pertaining to the discipline of computer science at it applied to the University of Southern Mississippi. Apparently, the Board of Trustees was considering the removal or reassignment of leadership roles and doctoral programs in computer science and other disciplines from the University of Southern Mississippi to another institution.
Thrash responded in writing on August 16, 1984, advising Van Slyke that certain of the requested documents were consultants' reports which had been made in confidence and thus were not available for release. He was, however, willing to provide Van Slyke with copies of the non-confidential documents.
Van Slyke again wrote to Thrash on August 20, 1984. This time, he requested copies of all records pertaining to all leadership roles of the three major universities. He advised Thrash to make any denial of access in writing so as to establish the jurisdictional requirements for legal action to obtain the documents. Thrash denied the request on August 23, 1984, stating that certain of the requested documents were confidential and exempt from the provisions of the Open Records Act and the Open Meetings Act.
Van Slyke promptly filed suit against the Board of Trustees in the Chancery Court of Hinds County on August 30, 1984, to obtain the documents he sought. Both parties concede that the issues of that case were resolved by this Court's decision in MississippiPublishers Corp. v. Board of Trustees of State Institutions ofHigher Learning, 478 So.2d 269 (Miss. 1985). Apparently, the Board of Trustees ultimately relinquished the documents Van Slyke had requested.
Van Slyke filed a second suit against the Board of Trustees and its members in the Chancery Court of Forrest County on October 29, 1984. He sought to enjoin the Board of Trustees from removing or reassigning any leadership roles until decisions were rendered on constitutional issues now before this Court, as well as on the suit he had brought in Hinds County. He further averred that he had been denied access to documents pertaining to the removal of two leadership roles from the University of Southern Mississippi.
The Board of Trustees filed motions to dismiss the second suit and for a change of venue to Hinds County. Both motions were overruled by the Forrest County Chancery Court on December 10, 1984. The Chancellor further denied the Board of Trustees' motion to stay further proceedings on December 18, 1984 and set a hearing on the injunctive relief requested by Van Slyke for January 3, 1985. The Board of Trustees then filed a Petition for a Grant of Interlocutory Appeal with Supersedeas with this Court. It was granted on January 2, 1985, and proceedings in the lower court were stayed pending the decision of the issue on appeal.
On December 17, 1986, we issued a written opinion finding that Van Slyke had standing to challenge the constitutionality of the Board and that venue was properly fixed in the Forrest County Circuit Court. However, that opinion was withdrawn following the granting of the Board of Trustees' Petition for Rehearing. InBoard of Trustees v. Van Slyke, 510 So.2d 490 (Miss. 1987) (hereinafter, "Van Slyke I"), we remanded the case to the Hinds County Chancery Court for trial without actually making a determination of whether Van Slyke had standing to raise the constitutional challenge to the Board of Trustees' composition. *Page 875 
 II.
We look first at the question of whether the Chancellor erred in finding that Van Slyke did not have standing to challenge the constitutionality of the composition of the Board of Trustees. In so holding, the Chancellor wrote as follows:
 [T]here is nothing in the pleadings to show that he is sufficiently affected or adversely affected by any action of the Board of Trustees. He is not a student, he is not a faculty member nor is there any other relationship which appears to be sufficient to give him standing to bring his suit. He appears to be no more interested than any other private citizen in the State of Mississippi and therefore does not have a right to bring this suit. Birdsong v. Grubbs, 208 So.2d [Miss.] 123, 43 So.2d 878 (1950).
Van Slyke contends that the Board of Trustees' denial of his request for documents under the Open Records Act constitutes an injury. The Board of Trustees, however, asserts that Van Slyke has shown no injury resulting from the operation or enforcement of the challenged constitutional provisions.
While the majority in Van Slyke I did not address Van Slyke's standing to bring suit with regard to the open records act or the constitutionality of the composition of the Board of Trustees, but limited its opinion to the venue questions raised, Justice Prather, in her dissent, discussed the subject as it applied to both issues. As she noted:
 [s]uccinctly phrased, standing to bring a lawsuit describes who may be heard by a judge. The law of standing is primarily concerned with determining the right of an individual to assert a claim for relief, calling into question the constitutionality and/or review of administrative or other government action.
510 So.2d at 495 (Prather, J., dissenting).
The federal courts, which adhere to a stringent definition of standing based on the United States Constitution, art. III, § II, limit review to actual "cases and controversies." Sosna v.Iowa, 419 U.S. 393, 397-403, 95 S.Ct. 553, 556-559, 42 L.Ed.2d 532, 539-543 (1975); Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505, 515, n. 10 (1974). The Mississippi Constitution, however, contains no such restrictive language. Therefore, we have been more permissive in granting standing to parties who seek review of governmental actions. VanSlyke I, 510 So.2d at 496. See also, Dye v. State ex rel.Hale, 507 So.2d 332, 338 (Miss. 1987) (State Senators had standing to sue Lieutenant Governor on charges that their legislative power had been impinged by his actions; Attorney General did not have exclusive power to bring suit); Canton FarmEquipment, Inc. v. Richardson, 501 So.2d 1098, 1106-1107 (Miss. 1987) (unsuccessful bidder for contract with County Board of Supervisors granted taxpayer standing to sue supervisor who did not comply with statutes in awarding bids, even though public not expressly invited to join the suit).
In suggesting that Van Slyke was a proper party to challenge the constitutionality of the composition of the Board of Trustees, it was observed in Van Slyke I that:
 The argument persists that citizens should have the authority to challenge the constitutionality and/or review of governmental action, and if individuals do not have such authority, how else may constitutional conflicts be raised. This is particularly true when a public official charged with such a duty fails to act. Constitutional litigation by private citizens may be maintained in cases where there is no probability of the statute being challenged by one of the class discriminated against; or, when a decision on validity would not be necessary, one not within the class may question the validity of the statute. Miller v. Lamar Life Insurance Co., 158 Miss. 753, 131 So. 282 (1930).
Van Slyke I, 510 So.2d at 497 (Prather, J., dissenting).
While Van Slyke's original Open Records Act claim against the Board of Trustees is moot, this should not, under our liberal standing requirements, preclude him from challenging the constitutionality of the *Page 876 
Board's composition. He ostensibly has brought this action as a private citizen rather than as a legislator.[1] Accordingly, we hold that the Chancellor erred in finding that Van Slyke did not have standing to bring suit against the Board of Trustees on the constitutional questions.
 III.
Finding that Van Slyke had standing to bring suit against the Board of Trustees, we turn next to the merits of the constitutional challenges he has raised. In so doing, we find two canons of constitutional construction to be particularly instructive. As we stated in Dye, provisions of the constitution should be read "so that each is given a maximum effect and a meaning in harmony with that of each other." Id.
at 342; St. Louis San Francisco Railway Co. v. Benton County,132 Miss. 325, 330, 96 So. 689, 690 (1923). Where conflict may appear to exist, specific articles such as those creating the Board of Trustees control over general provisions. See alsoDye, 507 So.2d 332 at 342; 16 Am.Jur.2d Constitutional Law § 103 (1979).
As we further stated in Dye, "our Constitution is a document presumed capable of ordering human affairs decades beyond the time of its ratification under circumstances beyond the prescience of the draftsmen." Id. at 342; Frazier v. State ofMississippi, 504 So.2d 675, 694 (Miss. 1987); Alexander v.State ex rel. Allain, 441 So.2d 1329, 1333 (Miss. 1983). Further, it should be read and enforced "in the manner which best fits its language and best serves our state today." Dye, 507 So.2d at 342; Alexander, 441 So.2d at 1334, 1339.
Likewise, when considering the constitutionality of a statute, we have stated:
 [o]ur own Court is committed to the proposition that a statute should be so construed as to render it constitutional, if possible, and a statute will not be declared invalid unless it is clearly apparent that it conflicts with the organic law after resolving all doubts in favor of its validity.
State ex rel. Jordan, District Attorney v. Gilmer Grocery Co.,156 Miss. 99, 125 So. 710, 714 (1930). See also, Lovorn v.Hathorn, 365 So.2d 947, 949-950 (Miss. 1979); Board ofEducation v. Educational Finance Commission, 243 Miss. 782,138 So.2d 912, 925-926 (1962). These cases have cited with approval 16 C.J.S. Constitutional Law § 151(1) for the proposition that:
 [t]he judiciary will interfere with acts of the legislative body only where they are beyond the bounds prescribed by the constitution, and a legislative usurpation of power should be clear, palpable, or oppressive, and the claimed infringement of the constitution should be real to justify interposition.
Id.
 A.
Van Slyke first contends that the Board of Trustees constitutes a fourth branch of government inconsistent with the Mississippi Constitution of 1892. Art. 8, § 213-A, Mississippi Constitution, provides for the establishment of the Board of Trustees to manage and control the State's institutions of higher learning. That amendment to the constitution further provides that:
 Such Board shall have the power and authority to elect the heads of the various institutions of higher learning, and contract with all deans, professors and members of the teaching staff, and all administrative employees of said institutions for a term of not more than four years; but said Board shall have the power and authority to terminate any such contract at any time for malfeasance, *Page 877 
inefficiency or contumacious conduct, but never for political reasons.
 Nothing herein contained shall in any way limit or take away the power of the Legislature had and possessed, if any, at the time of the adoption of this amendment, to consolidate or abolish any of the above named institutions.
The constitutional authority of the Board of Trustees has been implemented and supplemented by Miss. Code Ann. § 37-101-1, etseq.
The constitutional amendment which made the Board of Trustees a constitutional body was first approved by the Legislature and the electorate in 1944. State ex rel. Allain v. Board of Trustees ofInstitutions of Higher Learning, 387 So.2d 89, 91 (Miss. 1980). As we further explained in Allain:
 A general history of the Institutions of Higher Learning reveals that for many years those institutions had been "political footballs" of the politicians then in power. At one time, the accreditation was taken from most of the institutions because of the action of whomever was in power politically at that time. By the year 1944, the people of the state and the members of the Legislature were ready to cure the previous political diseases.
Id. at 91.
In Allain, we described the Board of Trustees as "a constitutionally created state agency." Id. We noted that other jurisdictions have considered the question of autonomy of college boards of trustees, but did not reach the question in that case.Id. at 92-93. Van Slyke, however, without citing any evidence or authority, charges that the Board is an autonomous or fourth branch of government merely because it is vested with authority by the Constitution.
In granting the Board of Trustees' motion for summary judgment, the Chancellor stated:
 There is no real question as to the character or nature of the activities of the Board of Trustees. It is definitely within the executive branch of government. It is in the nature of an administrative board, although created by the constitution instead of the legislature. Its twelve-year terms for its members sets it apart from other boards or departments and clearly shows the desire of the people of the State of Mississippi to have it operate with a considerable amount of independence and security of position. It is not an island, but it is a pretty good sized peninsula. Being in the executive branch or area of government takes it out from under the one-man one-vote requirement of the United States Constitution. Its whole makeup was designed to remove politics as far from it as possible. It should never be, of course, plagued with the stigma of "representative" members, but its very nature demands people to be its membership who are dedicated to the "institutions of higher learning" and not to represent one section of the state or one institution of the state.
Van Slyke's position in this assignment of error conflicts with his argument in Issue III(C) discussed below. For the reasons stated therein, we find that the Chancellor cannot be held in error for finding that the Board of Trustees is part of the executive branch of government, rather than an autonomous or fourth branch of government.
 B.
Both art. 8, § 213-A of the Mississippi Constitution and Miss. Code Ann. § 37-101-3 provide that members of the Board of Trustees shall be appointed by the Governor, by and with the advice and consent of the Senate. The Board is composed of one member from each of the state's congressional districts as they existed as of March 31, 1944; one member from each Supreme Court district; and two members from the state at large. Miss. Code Ann. § 37-101-5 enumerates the qualifications of the trustees as follows:
 There shall be appointed only men or women to membership on the board of trustees of higher learning as shall be qualified electors residing in the district from which each is appointed and at least twenty-five years of age and of the highest order of intelligence, character, learning *Page 878 
and fitness for the performance of such duties to the end that such board shall perform the high and honorable duties thereof to the greatest advantage of the people of the state and of such institutions, uninfluenced by any political considerations.
Without citing any authority, Van Slyke contends that theappointment of members to the Board of Trustees, a constitutionally-created body, is contrary to art. 3, sec. 5 of the Mississippi Constitution. Section 5 provides as follows:
 All political power is vested in, and derived from, the people; all government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.
Accordingly, he asserts that the appointment of Board members violates the principle of "one-man, one vote."
Looking first at the basic canons of constitutional construction, supra, where conflict appears to exist between two articles of the constitution, the specific provision will prevail over the more general provision. Accordingly, the more specific art. 8, § 213-A, which provides for the appointment of Board members would control. Furthermore, as we pointed out in our recitation of the history of the creation of the Board inAllain, the challenged amendment to the constitution was approved not only by the legislature, but also by the electorate. Moreover, in Sailors v. Board of Education of the County ofKent, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), wherein it was held that the selection of county school board members by delegates from local boards did not violate the fourteenth amendment, the U.S. Supreme Court stated that:
 [w]e find that no constitutional reason why state or local officers of the nonlegislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election.
387 U.S. at 108, 87 S.Ct. at 1552, 18 L.Ed.2d at 653.
As the Board of Trustees asserts, the one-man, one-vote rule does not apply to appointed positions. The Sailors Court further held that:
 Since the choice of members did not involve an election and since none was required for these nonlegislative offices, the principle of `one man, one vote' has no relevancy.
387 U.S. at 111, 87 S.Ct. at 1553, 18 L.Ed.2d at 655.
Likewise, in Hadley v. The Junior College District ofMetropolitan Kansas City, Missouri, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), applying the one-man, one-vote rule toelected trustees, the Court observed that:
 [w]e have also held that where a State chooses to select members of an official body by appointment rather than by election, and that choice does not itself offend the constitution, the fact that each official does not "represent" the same number of people does not deny those people equal protection of the laws.
397 U.S. at 58, 90 S.Ct. at 791, 25 L.Ed.2d at 52 (emphasis added). See also Oaks v. Board of Trustees of NortheastMississippi Junior College, 385 F. Supp. 392, 394 (N.D.Miss. 1974); Kelleher v. Southeastern Regional Vocational TechnicalHigh School, 806 F.2d 9, 12 (1st Cir. 1986).
Accordingly, we hold that the Chancellor correctly found that the one-man, one vote rule was not applicable to appointed members of the Board of Trustees.
 C.
Despite his argument that the Board of Trustees is a "fourth branch" of government, Van Slyke contends that the Chancellor erred in finding that the Board of Trustees is part of the executive branch rather than the legislative branch of government. After first contending in Issue III(B), supra, that its members should not be appointed at all, he then argues that appointment of the Board of Trustees by the Governor, rather than by the legislature, is an encroachment upon the powers of the legislative branch of the government, *Page 879 
in violation of art. 1, §§ 1 and 2, and art. 4, § 33 of Mississippi Constitution.
Without citing any authority or any evidence to support his position, Van Slyke argues that "[t]he history of education in Mississippi reveals that it is within the legislative department and the functions thereunder are legislative functions." He asserts that only the legislature has the power to appoint persons "to exercise legislative or quasi-legislative powers."
We articulated the differences between the duties of the executive and legislative branches of government in Alexander v.Allain, 441 So.2d 1329 (Miss. 1983). We defined "executive power" as
. . . the power to administer and enforce the laws as enacted by the legislature and interpreted by the courts. Quinn v. United States, 349 U.S. 155, 161, 75 S.Ct. 668, 672, 99 L.Ed. 964, 971 (1954); Mabray v. School Board of Carroll County, 162 Miss. 632, 636, 137 So. 105, 106 (1931). Execution is at the core of executive power. We also find pertinent the following distinction: "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." Springer v. Philippine Islands, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1927).
Id. at 1338.
The enumeration of the Board of Trustees' powers and duties contained within the constitution and the statutes support the Chancellor's finding that it is intended to perform executive, not legislative, functions. Both the constitution and Miss. Code Ann. § 37-101-1 place the state's institutions of higher learning under the "management and control" of the Board of Trustees. As cited in Issue III(B), supra, the constitution empowers the Board of Trustees to elect the heads of the state colleges and universities and to contract deans, professors, teaching staff and administrative employees. Notably, § 213-A reserves for the legislature the power and authority to abolish or consolidate any of the subject institutions.
Further general powers and duties of the Board of Trustees are set forth in Miss. Code Ann. § 37-101-15. The Board is charged with (a) the distribution and disbursement of funds; (b) general supervision of "all matters incident to the proper functioning of the institutions," including minimum entrance requirements, the care of buildings and grounds and the organization of the institutions' administrative plans; (c) adoption of rules and regulations to supervise and control the institutions, including the prescription of rules and regulations for the policing of campuses; (d) provision of a uniform system of accounting and recording, as well as preparing a budget for each institution to be presented to the legislature; (e) preparation of an annual report for the legislature of disbursements to and expenditures by each institution; and (f) the election of heads of institutions as well as contracting with deans, professors, teaching staff and administrative employees.
Miss. Code Ann. § 37-101-13 vests the Board of Trustees with the duty to study the roles and scope of the institutions within its jurisdiction. The statute empowers the Board to make adjustments in the programs of those institutions "to the end that the broadest possible educational opportunities shall be offered to the citizens of this state without inefficient and needless duplication."[2]
These powers and duties all fall well within the parameters of executive functions as we defined them in Alexander.
Accordingly, even looking, as we must, at the evidence in a light most favorable to Van Slyke, the non-moving party, we find the Chancellor was not manifestly wrong in finding that the Board of Trustees is an executive rather than a legislative body. *Page 880 
 D.
Both § 213-A of the Mississippi Constitution and Miss. Code Ann. § 37-1-3 specify that the composition of the Board of Trustees shall include "one member from each congressional district of the state as existing as of March 31, 1944." Van Slyke, again without citing any meaningful authority, argues merely that "the framers of the Constitution did not intend that constitutional appointments be made to the Board of Trustees based on 1944 congressional districts indefinitely."
In 1944, there were six congressional districts in Mississippi. Miss. Code Ann. § 3305 (1942). Today, there are only five districts, whose boundaries have been changed numerous times since 1944, most recently, in 1987. Miss. Code Ann. § 23-15-1037
(1990). While the logic of Van Slyke's argument is compelling, his presentation falls short of a constitutional challenge. We are once again reminded that a complaining party has "an affirmative duty to specifically address the issue and provide authoritative support for its position." R.C. Petroleum, Inc. v.Hernandez, 555 So.2d 1017, 1023 (Miss. 1990). When that party has failed to do so, this Court is under no obligation to consider the issue. Id. Further, in addressing challenges to the constitutionality of statutes, we have cited with approval 11 Am.Jur., Constitutional Law § 132 for the proposition that:
 With regard to the duties cast upon the assailant of a legislative enactment, the rule is fixed that a party who alleges the unconstitutionality of a statute has the burden of substantiating his claim and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped its power or has violated the Constitution must affirmatively and clearly establish his position.
See Lovorn v. Hathorn, 365 So.2d 947, 949-50 (Miss. 1979);Board of Education v. Educational Finance Commission, 243 Miss. 782, 138 So.2d 912 (1962). Throughout this appeal, Van Slyke has taken a variety of inconsistent positions, asserting first that the Board of Trustees is unconstitutional because it comprises a fourth branch of government; then, that it is part of the legislative branch and thus, the Governor should not appoint its members. He then contends that the selection of the Board members should be handled by the Legislature, despite his assertion that appointment of members is unconstitutional. He has failed to make an affirmative and clear establishment of his position in this or any other issue raised on appeal.
In its recent decision in United States v. Fordice, ___ U.S. ___, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992), the U.S. Supreme Court stated that its "decisions establish that a State does not discharge its constitutional obligations until it eradicates policies and practices traceable to its prior de jure dual system that continue to foster segregation." Id. ___ U.S. at ___, 112 S.Ct. at 2735, 120 L.Ed.2d at 592. Applying that standard, the Court remanded the case for further inquiry into four policies: admissions standards, program duplication, institutional mission assignments, and continued operation of all eight public universities. Id., ___ U.S. at ___, 112 S.Ct. at 2738, 120 L.Ed.2d at 596. Pursuant to Miss. Code Ann. §§37-101-15 and 37-101-13, these policies come within the purview of the Board of Trustees. Under Fordice, a valid argument against basing the composition of the Board partially on the basis of 1944 congressional districts could well be made. However, Van Slyke has not raised this issue. Nevertheless, in light of the Supreme Court's decision, Van Slyke's challenge may be moot — or more properly determined by another court on other grounds.
 IV.
Although Van Slyke's alleged injury was rendered moot by our decision in Board of Trustees of State Institutions of HigherLearning v. Mississippi Publishers Corp., 478 So.2d 269 (Miss. 1985), we find that under our liberal rules of standing, he has *Page 881 
standing as a private citizen to raise constitutional challenges to the composition of the Board of Trustees. Any error made by the Chancellor, however, in finding that Van Slyke did not have standing was, for all practical purposes, rectified by his decision to address and rule on the merits of the constitutional arguments raised.
Given Van Slyke's lack of any clear and consistent constitutional or statutory argument, compounded by his lapses in the use of authority to support even his more cogent arguments, he has failed to overcome the presumptions of validity which surround articles of the constitution and statutes. Those statutes which delineate the powers and duties of the Board of Trustees support the Chancellor's findings that the Board is an executive body and thus not subject to the one-man, one-vote requirement.
We find that the Chancellor did not err in granting the Board of Trustees' motion for summary judgment and his decision is therefore affirmed.
REVERSED AND RENDERED AS TO ISSUE OF STANDING; AFFIRMED AS TO GRANTING SUMMARY JUDGMENT MOTION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and ROBERTS and SMITH, JJ., concur.
SULLIVAN, PITTMAN and BANKS, JJ., not participating.
[1] In its brief, the Board of Trustees points out that as a legislator, Van Slyke voted in favor of legislation in 1987 which brought forward section 213-A as amended. Van Slyke concedes that he voted for the measure, believing that "it was a matter of abolishing the La Bauve Trustee and bring forward other sections of the amendment intact." He observed that "[u]nfortunately, many times, in Legislative action, when several provisions are contained in the same measure, one must take the bitter with the sweet."
[2] Van Slyke makes only a passing reference in his standing argument to his charges that the Board of Trustees made changes to the leadership roles of the University of Southern Mississippi "in a shroud of secrecy" and has not made that issue an express part of this appeal. *Page 1178