IRVING, P.J.,
for the Court:
¶ 1. On February 20, 2009, Ernest T. Jones filed a petition for a writ of certiora-ri in the Claiborne County Circuit Court, contesting the findings of the Alcorn State University (ASU) Grievance Committee (Committee) that resulted in his termination as ASU’s head football coach. The circuit court dismissed Jones’s petition. Feeling aggrieved, Jones appeals and argues that the circuit court (1) misapplied the law regarding the constitutional and statutory violations committed by ASU, Dr. Darren J. Hamilton, Dr. George E. Ross, and the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi (Board) in wrongfully violating his employment contract; (2) erred in failing to address Jones’s property interest in his employment; and (3) erred in failing to address the arbitrary and capricious manner in which ASU violated his employment contract.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On August 11, 2008, Jones entered into an employment contract with the Board. The contract reads, in pertinent part:
The Employee is hereby employed as Head Football Coach and Instructor ... at [ASU] ... for the period beginning January 2, 2008[,] and ending on December 31, 2011, at and for the sum of $140,000, payable in 12 monthly installments starting at the close of the months of January 2008 through December 2011, inclusive.
This employment contract is subject to the following terms and conditions:
1. The laws of the State of Mississippi and policies and by-laws of the Board....
3. The Board shall have the authority to terminate this contract at any time for the following [reasons]:
a. Financial exigencies declared by the Board;
b. Termination or reduction of programs, or academic or administration units as approved by the Board;
c. Malfeasance, inefficiency[,] or contumacious conduct;
d. For cause.
One of the additional clauses of the employment contract provides that
[ i]n the event that the Board decides to terminate this contract on the basis of [the] employee’s malfeasance, inefficiency, contumacious conduct!,] or for cause, both the coaching and instructional posi *451 tions of [the] employee are terminable at any time, subsequent to written notice of the reasons for termination and a pre-termination hearing!.]
¶ 4. Hamilton, ASU’s athletic director, gave written notice to Jones that ASU was considering terminating Jones’s employment as head football coach. In the letter, Hamilton cited inefficiency and malfeasance and identified the following reasons for recommending Jones’s termination:
Opening [the Run-N-Gun] bank account in your name and depositing fundraising monies for ASU’s football program without proper authority to do so and without following the proper procedures,
Improperly purchasing and receiving footwear on behalf of ASU with a non-approved Nike vender when ASU has an exclusive footwear contract with Nike, Inefficiency in resolving the $11,000 goods order from Russell Athletics without authority to do so and without following proper procedures!,] and
Contractually binding ASU for rooms reserved at the Marriott Hotel in Jackson, [Mississippi,] during the Capital City Classic without authority to do so and without following proper procedures.
The letter also informed Jones of his rights, pursuant to the Board’s policy, to have a due-process hearing and to have an attorney present at the hearing. Specifically, the letter stated that if Jones chose to bring an attorney to the hearing, the attorney could “act only as an advisor and [would] not be allowed to present evidence or cross-examine witnesses,” but that Jones could present evidence, invite witnesses to speak on his behalf, and question witnesses.
¶5. Jones wrote a letter to Hamilton stating that he “expect[ed] and demand[ed]” a due process hearing. Keyla McCullum, special assistant attorney general, "wrote to Jones’s attorney and informed him that she would be acting as legal counsel for the Committee, which consisted of three full-time employees of ASU. Her letter also informed him of the hearing procedures.
¶ 6. On January 16, 2009, the Committee held Jones’s due-process hearing. After the hearing, the Committee recommended to Ross, ASU’s president, that Jones be terminated on the grounds of malfeasance and contumacious conduct and included their findings on each accusation. On January 26, 2009, President Ross wrote a letter to Jones informing him that he concurred with the Committee’s recommendation and that Jones was terminated as head football coach, effective January 28, 2009. Jones filed his petition for a writ of certiorari in circuit court, which dismissed the petition on the ground that Jones did not meet his burden of proof regarding the Committee’s decision.
¶ 7. Additional facts, as necessary, will be related in our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 8. “The State’s public universities are considered a part of the executive branch of State government.” Smith v. Univ. of Miss., 797 So.2d 956, 959 (¶ 11) (Miss.2001) (citing Van Slyke v. Bd. of Trs. of State Insts. of Higher Learning, 613 So.2d 872, 879 (Miss.1993)). “State universities, like other executive branch agencies, have adopted appellate procedures for employees who wish to contest an adverse employment decision and have formed administrative, quasi-judicial tribunals to hear and rule upon employee appeals.” Id. at 960 (¶ 11). The Mississippi Supreme Court has held that the decisions of these tribunals may be reviewed by writ of cer- *452 tiorari. Id. at (¶ 12). On appeal, the circuit court and this Court’s standard of review is limited to determining whether the decision “(1) was unsupported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of the [tribunal] to make, or (4) violated some statutory or constitutional right of the complaining party.” Miss. Bureau of Narcotics v. Stacy, 817 So.2d 523, 528 (¶ 17) (Miss.2002). In reviewing those decisions, the circuit court must not substitute its judgment for that of the tribunal. Id. at 526 (¶ 9).

I. Constitutional and Statutory Rights

¶ 9. Jones argues that the circuit court erred in not making any findings of fact and “merely recit[ing] general elements of law without making any application of such law to the facts addressed in the [p]etition, ... in violation of Rule 52(a) of the Mississippi Rules of Civil Procedure.” However, because the circuit court was sitting as an appellate court in this instance, it was not required to issue findings of fact. See Charles E. Morgan Constr. Co. v. City of Starkville, 909 So.2d 1145, 1149 (¶ 12) (Miss.Ct.App.2005).
¶ 10. Next, Jones claims that he was denied procedural due process and that the circuit court failed to address this issue in its order. “Proeedural[-]due[-]process claims require a two-step analysis: (1) does the plaintiff have a property interest entitled to procedural[-]due[-]process protection; and (2) if yes, what process is due.” Harris v. Miss. Valley State Univ., 873 So.2d 970, 985 (¶ 40) (Miss.2004) (citing Bluitt v. Houston Indep. Sch. Dist., 236 F.Supp.2d 703, 733 (S.D.Tex.2002)). “Under Mississippi law, public employees who have contracts with definite terms have property interests and an expectancy of continued employment and[,] therefore[,] are entitled to the protections of the [D]ue [P]roeess [C]lause of the Fourteenth Amendment to the U.S. Constitution.” Diamondhead Country Club & Prop. Owners Assoc., Inc. v. Montjoy, 820 So.2d 676, 681 (¶ 9) (Miss.Ct.App.2000) (citations omitted). Public employees who have a property interest in their employment must be given notice of impending termination and an opportunity to respond. Harris, 873 So.2d at 985 (¶ 40). Notice to the employee is effective once the employee receives an oral or written explanation of the charges against the employee. Id. An adequate opportunity to be heard consists of at least a hearing, but it does not require the procedural safeguards of a trial. Id.
¶ 11. As Jones was a public employee with a contract with definite terms, he was entitled to due-process protections. Hamilton’s letter to Jones cited malfeasance and inefficiency as grounds for recommending his termination. The letter also included specific allegations against Jones and informed him of his right to a hearing. Therefore, Jones received adequate notice as required by procedural due process. Also, ASU granted Jones a hearing that gave him a fair opportunity to be heard and to rebut the allegations being made against him. Jones argues that the hearing was unfair, as his attorney was not allowed to cross-examine witnesses or present evidence, and that McCullum acted as if she were a judge presiding over the hearing. However, Hamilton explained in his letter to Jones that Jones’s attorney would only serve as an advisor and could neither present evidence nor cross-examine witnesses. Also, it is clear in the transcript that McCullum effectively ran the hearing based on proper protocol and procedure. Accordingly, ASU did not violate Jones’s due-process rights. This issue is without merit.

*453
II. Arbitrary and Capricious

¶ 12. Jones insists that ASU “possessed no reason or judgment” in the decision to terminate him and that the termination of his contract was arbitrary and capricious. According to our supreme court, “the terms arbitrary and capricious are open-textured and not susceptible to precise definition or mechanical application.” Miss. Transp. Comm’n v. Anson, 879 So.2d 958, 964 (¶ 17) (Miss.2004) (quoting Miss. State Dep’t of Health v. Sw. Miss. Reg’l. Med. Ctr., 580 So.2d 1238, 1240 (Miss.1991)) (internal quotation marks omitted). “[A]n act is capricious when it is done without reason, in a whimsical manner, implying either lack of understanding of or a disregard for the surrounding facts and settled controlling principles.” Id. (quoting Sw. Miss. Reg’l. Med. Ctr., 580 So.2d at 1240) (internal quotation marks omitted). An act is arbitrary when done “capriciously or at pleasure.” Sw. Miss. Reg’l. Med. Ctr., 580 So.2d at 1240 (citation omitted).
¶ 13. We cannot find that the Committee’s findings were without reason or implied a lack of understanding. The evidence throughout the record and transcript supports the Committee’s findings. Jones opened the Run-N-Gun account as a separate account for fundraising monies for ASU-football radio and television shows. Jones was the only person who had control over the account. When told to close the account because he did not have approval to open the account, Jones wrote a $7,674.67 check to the ASU Foundation out of the account, leaving $2,506 unaccounted for, which Jones claims was used to pay for concessions for one of the fundraisers. Hamilton stated that he knew of and approved these fundraisers, but did not know that the money that was raised was going into a separate personal account instead of the Foundation’s account. The Committee found that there was no administrative oversight on how the Run-N-Gun account was operated, how cash and check receipts were processed, or how withdrawals were made.
¶ 14. With regard to the purchase of footwear on behalf of ASU from a non-approved Nike vendor, the Committee found that Jones had previously been allowed to purchase goods from vendors of his choice without prior approval. The Committee further found that Jones had no knowledge of ASU’s exclusive Nike contract. As for the inefficiency in resolving the issue of an $11,000-goods order that was made without authority, the Committee found that Jones himself did not initiate the order. However, the Committee also found that Jones was uncooperative in assisting ASU’s athletic department in resolving the problem. Further, Jones made no effort to confirm the meeting date or attend the meeting scheduled for the purpose of addressing the outstanding bill.
¶ 15. Finally, regarding the allegation that Jones did not follow the proper procedure or obtain authority to bind ASU for rooms at the Marriott Hotel in Jackson, Mississippi, for the Capital City Classic, the Committee found that “[Jones’s] self-interest had taken precedence over the university’s interests.” The Committee also found that Jones contractually bound ASU without initiating a requisition or obtaining the purchase order. Even though ASU was able to recoup expenses for some of the unused hotel reservations, ASU still incurred additional expenses for the remaining unused hotel reservations.
¶ 16. The Committee considered the testimony and exhibits from the hearing and made recommendations that were neither arbitrary nor capricious. The Committee supported its recommendation with the evidence and testimony presented at *454 the hearing, indicating that there was no lack of reasoning or understanding, or disregard for the surrounding facts and settled controlling principles. Thus, the Committee’s decision was not arbitrary and capricious, and the circuit court did not err in dismissing Jones’s petition for a writ of certiorari.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.