THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. F. J. LANDER et al., Councilmen, etc., *Defendants*.

No. 17,863.

### SYLLABUS BY THE COURT.

1. OUSTER — *City Councilmen — Duties — Tax Levy—Discretion.* The law authorizes the mayor and council of a city of the third class to levy and certify a tax, but does not require them to do so in case there be no necessity therefor.

2. ——— *Mayor—Appointing Powers—City Officers.* The statute requires the mayor, by and with consent of the council, to appoint certain officers, including a city marshal, and authorizes the appointment of others if deemed necessary.

Original proceeding in quo warranto.  Opinion filed June 8, 1912.  Cause continued for further orders and final disposition.

*John S. Dawson,* attorney-general, and *F. P. Lindsay,* for the plaintiff.

*Alfred M. Jackson,* and *Albert L. Noble,* for the defendants.

The opinion of the court was delivered by

WEST, J.:  This action was brought by the state on the relation of the attorney-general to remove from office three councilmen of Hunnewell, a city of the third class containing about two hundred inhabitants.  The act of 1911 authorizes the removal of any person holding an office of trust or profit "who shall willfully misconduct himself in office, or who shall willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state of Kansas."  (Laws 1911, ch. 237, § 1.)    The petition alleges substantially that the defendants conspired together to oppose the mayor and to refuse confirmation of persons appointed by her to office; that they conducted themselves in an insulting manner at official meetings; that they refused to levy a tax, and arbitrarily refused to confirm the appointment of suitable persons for appointive offices, and by their conduct deprived the city of a clerk, treasurer, marshal and street commissioner, and refused to provide funds for carrying on the city's business; that they attempted to hold council meetings in a bedroom of a hotel purposely and as an insult to the mayor.

Without giving a detailed result of exploring the wilderness of evidence it is sufficient to say that an outline of the situation disclosed thereby is:  The defendants were elected councilmen and Mrs. Ella Wilson became mayor; she desired a woman for city clerk, and the council preferred a man who, it was alleged,

had sufficient knowledge and experience to draw an ordinance; the mayor insisted that the city needed a marshal and that his appointment would require a salary and entail an expense of at least $30 a month; the council contended that the city had had no marshal for several years, and being an ordinary country village in which a deputy sheriff resided and from which the county attorney could be reached at any time by telephone that a salaried marshal was unnecessary and would cause a needless expense; they were willing to have a marshal appointed if he would serve for fees when his service was required; the mayor thought it was the duty of the city to levy a tax; the council urged that the city had no indebtedness and had sufficient money in the treasury to obviate the necessity of a tax levy; the mayor believed it was the duty of the council to confirm any appointments she made of good qualified citizens, and seemed to think it was their duty to give her their reasons for failure to confirm; the defendants did not like the idea of serving with a woman mayor and were set in their notion that they would not submit to dictation by her.

None of the parties seem to have had a well-defined idea as to their duty or the statutes under which they were acting.

The assertion that the council sought to insult the mayor by choosing a hotel bedroom for a place of meeting is incorrect, the place discussed and used for one meeting being a room in a hotel formerly used for a millinery store, containing a lounge and table but no bed.

By reason of local gossip, caused largely by newspaper publicity, a council meeting at Hunnewell soon came to be regarded as the chief attraction and amusement, and people would even come in from the country to attend, the result being an unseemly and disorderly gathering with but little accomplished except the entertainment of the assembled crowd. The alleged dis-

The State, *ex rel.*, v. Lander.

courtesy to the mayor consisted somewhat in the councilmen conducting themselves with more levity than dignity but chiefly in their refusal to confirm her appointments and agree with her policies.

The novelty of a town with a woman as mayor, the prolific and unwise advertising given the situation and the farcical performances engaged in by the parties have resulted in burdening in turn the governor, the attorney-general and this court with a petty neighborhood controversy which by the exercise of ordinary judgment and discretion and a modicum of good faith could have been avoided.

Without deciding at this time whether the defendants have been guilty of willful misconduct in office or of willful neglect to perform any duty enjoined upon them by the laws of the state, the attention of the parties concerned is called to certain matters which they should know and observe.

(1) While the statute (Gen. Stat. 1909, §§ 1545, 9388) authorizes the mayor and council to levy and certify a tax, it does not require them so to do in case there be no necessity therefor.

(2) The statute (Gen. Stat. 1909, § 1518) provides that the mayor shall, by and with consent of the council, appoint a city clerk, city treasurer, city marshal, and may appoint a street commissioner and such other officers as may be deemed necessary. The spirit of this statute requires that the council act in good faith upon the appointments made by the mayor and that if their confirmation be withheld it be for some reason sufficient to actuate honest men in the performance of their duty although they are not required to express what such reason is.

(3) There is no power to appropriate or use script or draw orders for money except in pursuance of an ordinance. (Gen. Stat. 1909, § 1553.) The council have the right to select one of their own body as president of the council, who may preside at all meetings in

the absence of the mayor.  (Gen. Stat. 1909, § 1542.)

(4) It is for the mayor and council in the *bona fide* exercise of their judgment to determine whether a marshal, when appointed and confirmed, shall be paid by salary or by fees. It is likewise for similar determination whether a tax shall be levied, keeping in view the fact that it is their duty to provide for the necessary expense of conducting the city in a proper manner and to keep down lawlessness and rowdyism.

While it is proper to have open meetings which the public may attend, it is not proper to conduct such meetings for the purpose of providing entertainment and amusement, and it may be necessary for the mayor and council to hold executive sessions from which bystanders are excluded to the end that orderly proceedings and administration of the city's affairs may be had.

The cause will be continued, with the right of either party to apply for further orders herein, for final disposition when the court becomes satisfied whether or not the mayor and council are acting together in good faith for the welfare of the city in the performance of their official duties.

PORTER, J. (dissenting) : The burden was upon the state to establish by evidence that the defendants were guilty of willful misfeasance or malfeasance in office. The majority opinion practically concedes that the state has failed to establish either fact. There is no law which requires the city to levy a tax where, as is shown in this case, no tax was necessary. True, the legislature has declared that the mayor of cities of the third class "shall" appoint a city marshal by and with the consent of the council. For a number of years this village of less than two hundred inhabitants managed to get along without the services of a marshal and several preceding administrations ignored the mandate of the statute without disastrous consequences. From this it

seems far more probable that in refusing to confirm
the mayor's appointment of a marshal, the defendants
acted in good faith than that they were seeking to
humiliate and embarrass the mayor. Since the state
has utterly failed to do more than raise a suspicion of
bad faith on a part of the defendants the case should
be dismissed. To retain jurisdiction and continue the
case for further proceedings in the event the defend-
ants' official conduct in the future fails to meet with
our approval seems to me to assume powers which are,
at least, not judicial. If the defendants are guilty of
misfeasance or malfeasance in office the court should
so declare and judgment of ouster should be entered.
On the other hand, if the state, after taking the deposi-
tions of dozens of witnesses, has failed to establish the
defendants' guilt, the court should so declare and judg-
ment should be given for the defendants. Aside from
the public interest occasioned by the notoriety given it
by the press, the case, in my opinion, never had any
importance or merit.