669 So.2d 752 (1996)
David JORDAN, Arthur A. Floyd, Jo Claire Swayze, James L. Holly, Dr. Joseph W. Curtis, James Moore, and Carl Palmer, Members of the City Council of the City of Greenwood, Mississippi
v.
Harry L. SMITH, in his Capacity as Mayor of the City of Greenwood, Mississippi.
No. 92-CA-00151-SCT.
Supreme Court of Mississippi.
February 5, 1996.
*753 Charles Victor McTeer, McTeer & Associates, Greenville, Shirley Byers, Greenville, for appellant.
Webb Franklin, Sam N. Fonda, Lott Franklin Fonda & Flanagan, Greenwood, for appellees.
En Banc.
BANKS, Justice, for the Court:
This matter requires that we construe statutory law with regard to the relative powers and prerogatives of the mayor and the city council in a mayor-council form of municipal government. We conclude that duly adopted city ordinances subjecting mayoral appointments of municipal judges, prosecutors and of the city attorney to the approval of the city council do not offend the statutory command that the executive power of the municipality vest in the mayor. We also conclude that the "claims docket" method of handling the municipal expenditures, while facially incompatible with the statutory mayor-council form of government, is nevertheless statutorily required. Accordingly, we reverse on the direct appeal and affirm on the cross-appeal.

I.
Prior to July 1, 1985, the City of Greenwood, Mississippi operated under the commission form of government pursuant to Miss. Code Ann. § 21-5-1 through § 21-5-23 (1972). Under this form of government, a mayor and two commissioners were elected at large. The mayor would then appoint, subject to confirmation by the commission, the city attorney and other municipal court personnel. All claims against the City and proposed expenditures were maintained on a claims docket to be approved by the commission.
On July 1, 1985, the City adopted the mayor-council form of government pursuant to Miss. Code Ann. § 21-8-1 through § 21-8-47 (1972). Under this system, the mayor is *754 elected at large and the seven council members are elected from seven separate wards. After the adoption of the mayor-council form of government, the City continued, pursuant to ordinances adopted by the City in 1985, to appoint municipal court personnel, subject to council confirmation. Also, the aforementioned claims docket procedure, as practiced by the City prior to July 1985, continued in the same fashion.
Louis E. Fancher, Jr. (Fancher), was elected as Greenwood mayor in 1985 under the newly adopted mayor-council form of government for a four year term. During this period, municipal court personnel were selected on an annual basis through mayoral appointment subject to council confirmation. In 1989, Fancher was re-elected to serve another four year term.
Prior to June 1991, Lee Abraham, Jr. (Abraham) served as city attorney. When Abraham's appointment was about to expire, Fancher submitted to the council for confirmation that Abraham be reappointed as city attorney. The council rejected Fancher's nomination of Abraham for city attorney.
Fancher thereafter requested and obtained an opinion from the Mississippi Attorney General as to whether Abraham could be retained as city attorney until a permanent city attorney could be appointed. In a letter of response, the Attorney General informed Fancher that Abraham could continue to act as city attorney for a "short period of time." Because the Attorney General's letter was not specific as to exactly what constituted a "short period of time," the council passed a resolution restricting Abraham's interim term to August 20, 1991. This resolution was subsequently vetoed by Fancher. On August 27, 1991, Abraham resigned as city attorney, but proposed that he be allowed to continue to work on the pending court cases involving the City. The council denied his proposal.
On September 10, 1991, the council passed a resolution appointing Willie Perkins (Perkins) as city attorney. In response, Fancher issued an executive order appointing, without council confirmation, Luke Schissel as city attorney. The council subsequently passed another resolution declaring Fancher's appointment of Schissel to be null and void.
On September 11, 1991, Fancher filed a complaint for a declaratory judgment and a temporary restraining order (TRO) in the Chancery Court of Leflore County against the members of the council. The TRO application claimed that pursuant to the Mississippi Code, Fancher, as mayor, was vested with the exclusive authority and power to appoint the city attorney, municipal court judge, municipal court judge pro tempore, municipal court public defender, and administer the municipal budget. The application for the TRO was set to be heard on September 12, 1991.
On September 12, 1991, the council moved the case to the United States District Court for the Northern District of Mississippi, invoking that court's federal question jurisdiction. The council claimed that Fancher's actions violated § 5 of the Voting Rights Act of 1965, and the Fourteenth and Fifteenth Amendment of the United States Constitution. The council also sought a preliminary injunction to prohibit Fancher from appointing anyone to serve as the city attorney, municipal judge, city prosecutor or city public defender without the confirmation of the council.
On September 30, 1991, a hearing was held in the United States District Court to determine the merits of the council's request for a preliminary injunction and Fancher's request to remand the case to the state court. Fancher testified that for as long as he could remember, all appointments made to the positions of city attorney, city prosecutor, city public defender, and city judge had been made by mayoral nomination and council confirmation. Fancher also testified that the aforementioned appointment procedure had been effective and beneficial to the Greenwood community. However, Fancher testified, in his judgment it was necessary to stray from the historical appointment procedure when the African-American majority of the city council demanded that Perkins be appointed city attorney. The appointment of Perkins was contrary to what Fancher felt to be in the best interest of the community. Furthermore, Fancher testified, although in *755 the past he had interpreted the appointment procedure of the municipal form of government to provide that the mayor nominate and the council confirm, the Mississippi courts, in his opinion in Bucklew v. City of Laurel City Council,[1] interpreted the statute to mean that the mayor was vested with complete authority to appoint the disputed city officials.
On November 5, 1991, the U.S. District Court issued an opinion and order declaring that there were no Voting Rights Act violations, dismissing the council's request for a preliminary injunction, rescinding Schissel's interim appointment as city attorney and remanding the case to the chancery court. The court reasoned that although Fancher may have attempted to appoint a city attorney without council confirmation, "the council exercised its right to participate in the confirmation process by expressly denying the confirmation and compensation to the mayor's appointee." Thus, the district court opined, a city attorney was never actually appointed and there was no "change" necessary to claim a § 5 violation.
On November 8, 1991, a hearing was held in the Leflore County Chancery Court to hear the merits of Fancher's September 11th TRO application against the council, allowing Fancher to appoint Schissel as city attorney without interference from the council.
The chancellor reasoned that Greenwood was in need of an attorney and based on the proof presented by Fancher, it was apparent that an impasse existed between the mayor and the council regarding who should assume the city attorney position. The chancellor also noted that the Supreme Court had affirmed without opinion that the mayor had exclusive power in the Bucklew case.[2]
The chancellor declared that he was inclined to follow the decision of the Mississippi Supreme Court for purposes of granting the TRO. As a result, Schissel was appointed interim city attorney for a period not to exceed December 31, 1991.
On December 30, 1991, the parties gathered in the final hearing and announced that they had entered into a stipulation regarding certain undisputed facts and issues to the extent that no further testimony was required. Accordingly, the chancellor issued an order to this effect.
On February 7, 1992, the chancellor issued his opinion. The chancellor held that under the Mississippi mayor-council form of government, the mayor had exclusive power and authority to employ the city attorney, the municipal court judge, the municipal court prosecutor and public defender, and the municipal court prosecutor for housing code violations. The chancellor reasoned that the phrase "governing authorities" as it was used in the pertinent statutory provisions, was generic. Furthermore, the chancellor reasoned, when said statutes were read in conjunction with the mayor-council form of government statutes, the term "governing authorities" meant the mayor. The chancellor also held that Fancher's action in appointing Schissel to the position of city attorney without confirmation from the council, did not constitute a change under § 5 of the Voting Rights Act.
Citing Miss. Code Ann. § 21-35-17[3] (1972) as its basis, the court ruled that there was no *756 infringement upon Fancher's executive power as mayor, when the council voted on claims before they were paid. The court reasoned that the claims docket is essentially an accounting and auditing process. Therefore, the lower court held, it has nothing to do with executive power. Furthermore, since the state Legislature set up the claims-docket procedure to be utilized by all forms of city government, the lower court opined, the claims-docket process was mechanical and should be used only as a method by which the city ensures it does not spend in excess of its budget.
From this ruling both sides appealed, the council appealing the appointment power ruling, and the mayor cross-appealing the claims-docket ruling.

II.

a.
The council contends that under the mayor-council form of government, the mayor of a municipality does not have exclusive authority to appoint the city attorney and other municipal court officers. It claims that the Mississippi Legislature did not intend that the term "governing authorities" in a mayor-council form of government to mean sole mayoral authority to the exclusion of the council, but rather, that the only proper reading of that term is inclusive of all entities of governance of municipalities.
The code, in the chapter on the mayor-council form of government provides that the "legislative power of the municipality shall be exercised by the municipal council, except as otherwise provided by general law," Miss. Code Ann. § 21-8-9 (1972), and that the executive power of a municipality shall be exercised by the mayor. Miss. Code Ann. § 21-8-15 (1972). It is also prescribed that the "governing authorities may annually appoint an attorney-at-law for the municipality." Miss. Code Ann. § 21-15-25 (1972). Regarding other court officers, the code provides that the municipal judge and prosecuting attorney shall be appointed by the governing authorities. Miss. Code Ann. § 21-23-3 (1972). In Miss. Code Ann. § 21-8-43 (1972), the Code provides that in the event a municipality adopts the mayor-council form of government, all statutes conflicting with the provisions of such a form of government are repealed. Miss. Code Ann. § 21-8-43 (1972).
The Code fails to prescribe the appointment procedure of city legal officials, except for what is found in Miss. Code Ann. §§ 21-15-25 and 21-23-3 (1972). These particular Code provisions speak to appointment power of the "governing authorities." The Code fails, however, to define "governing authorities" as it pertains to the mayor-council or any other form of municipal government. The chancellor's conclusion that the term is generic has merit. The general statutes applying to multiple forms of governance may refer to "governing authorities" meaning the mayor, the council or board, or both, depending upon the context and the specific statutory provision for each activity in question. This conclusion with respect to the term does not, however, lead to the result reached by the chancellor on the issue here presented. The question, here, is whether, in the context of city legal officers, the term "governing authorities" should be read to mean the mayor, the council or both. More appropriately stated, the question is whether handling those appointments pursuant to duly adopted ordinances giving the council approval or "advice and consent" runs afoul of the mayor-council statutory scheme which purports to vest "executive" power in the mayor and "legislative" power in the city council.
This Court has held that in interpreting statutes, it will not only look to the actual wording, but will also consider the purpose and policy of the Legislature. Aikerson v. State, 274 So.2d 124 (Miss. 1973). Additionally, this Court has held that there is no natural law of the separation of powers, and the powers of local government are separate only insofar as the State Constitution makes them. Dye v. State ex rel. Hale, 507 So.2d 332 (Miss. 1987).
We look, then, primarily to the statutory scheme itself for guidance as to separation of powers in this context. In the mayor-council form of government, a mayor's appointments of departmental directors and members of any "board, authority or commission" are *757 explicitly subject to council confirmation or rejection. Miss. Code Ann. § 21-8-23 (1972). Moreover, should a city elect to have one, the appointment of a chief administrative officer is also subject to the council's "advice and consent." Miss. Code Ann. § 21-8-25 (1972). Thus, although the Legislature has specifically defined the council's role as legislative and the mayor's role as executive, the Legislature has also required the two entities to jointly decide on city department directors, members of municipal boards and a plethora of other municipal authorities and commissions, most of which have unquestionably executive functions. See Miss. Code Ann. §§ 21-8-9 and 21-8-15 (1972).
Moreover, the approval or "advice and consent" requirement in the appointment process for executive and judicial officers has never been questioned as outside the legislative domain. Executive and other non-legislative officials are made subject to legislative advice and consent at all levels of government in our country. See, e.g., United States Constitution art. II, §§ I and II, cl. 2. United States Constitution (providing, respectively, that the executive power is vested in the President and that the appointment power with respect to officers and judges shall be exercised with the advice and consent of the Senate.); Mississippi Constitution Article 8, Section 213-A, (providing for gubernatorial appointment of Trustees to the Board of Trustees of Institutions of Higher Learning with the advice and consent of the Senate.). Indeed, as noted above, it is explicitly provided for in the very legislative scheme here under consideration.
The dissent suggests that our holding in City of Jackson v. Freeman-Howie, Inc., 239 Miss. 84, 93-94, 121 So.2d 120 (1960) has some bearing on this question. Its reliance is misplaced. This is not a case in which a municipality seeks to do something that it is not authorized to do. The governing authorities of the City of Greenwood are clearly authorized to appoint a municipal judge and the other officers here involved. See, e.g., Miss. Code Ann. § 21-23-3 (1972). The question here involved is the apportionment of responsibility for appointments among the constituent elements of municipal authority. While the city council has no authority to appoint, nothing in our statutes or precedents denies the council an advice and consent role in the appointive process. In such circumstances, the governing authorities of Greenwood were free to adopt the ordinances here questioned. Miss. Code Ann. § 21-17-5 (1972) ("The governing authorities of every municipality ... shall have the power to adopt any orders, resolutions or ordinances with respect to municipal affairs ... which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any statute or law of the State of Mississippi... ."). Hattiesburg Firefighters Local 184 v. City of Hattiesburg, 263 So.2d 767 (Miss. 1972).
We hold that the ordinance duly adopted by the City of Greenwood requiring that the legal officers here in question should be appointed subject to council approval is not inconsistent with the statutory requirement that executive authority be vested with the mayor in the mayor-council form of government. Accordingly, the judgment of the chancellor to the contrary must be reversed. Nothing said here is intended to sanction the city council assuming any right to initiate an appointment. We approve only an ordinance duly adopted applying the confirmation power to the municipal officers here involved. Confirmation should not be withheld without good cause. See Dawson v. Lander, 87 Kan. 474, 124 P. 364 (1912).

b.
Fancher asserts, that as mayor, his executive power includes the right to administer and expend the budget without interference from the council. Hence, Fancher argues, the chancellor's failure to hold that the requirement that all claims be voted on by the council before being paid violates Fancher's executive rights as Mayor, is contrary to the statutes command of separation of powers. Fancher, as he does with reference to the appointive power, cites Hattiesburg Firefighters and Alexander v. State ex rel. Allain, 441 So.2d 1329 (Miss. 1983) in support of this argument.
In Hattiesburg Firefighters, a suit was brought challenging the city ordinance requiring civil service employees to reside *758 within the city limits. This Court held that a municipality can exercise powers which are clearly delegated to it by the state. 263 So.2d at 769. If there is a conflict between a municipal ordinance and a state statute, this Court stated, the latter must prevail. Id. Finding no contrary statute or constitutional provision, this Court upheld the ordinance.
In Alexander v. State ex rel. Allain, 441 So.2d 1329 (Miss. 1983), legislators sued the Attorney General seeking a declaratory judgment that their concurrent service on certain boards and commissions did not violate constitutional separation of powers provisions. Furthermore, the legislators requested a declaratory judgment upholding statutes permitting such concurrent service and rendering it constitutional. Id. This Court defined executive power as the power to administer and enforce laws as enacted by the legislature and as interpreted by the courts. Id. at 1338 citing Quinn v. United States, 349 U.S. 155, 161, 75 S.Ct. 668, 672-73, 99 L.Ed. 964 (1955); Mabray v. School Board of Carroll County, 162 Miss. 632, 137 So. 105, 106 (1931). This Court also held the following: (1) legislators could not, consistent with the Mississippi Constitution, serve on a budget preparation commission or agency with members of the executive branch; (2) once the legislature has levied taxes and made appropriations, the legislative prerogative ends in the budget control process and the executive responsibility of administering the appropriation begins; (3) the legislature may not administer an appropriation once it has been made and is also prohibited from imposing new limitations, restrictions, or conditions on the expenditures of such funds; and (4) legislators may not perform any budget control functions after appropriation and thus legislators serving on commissions with budgetary control or responsibility is unconstitutional. Alexander v. State ex rel. Allain, 441 So.2d 1329, 1340-41 (Miss. 1983).
The applicable Code provisions include Miss. Code Ann. § 21-39-9 (1972) and Miss. Code Ann. § 21-8-15 (1972). Miss. Code Ann. § 21-39-9 (1972) provides that at "each regular meeting of the governing authorities" the claims on file and not paid are to be paid by the "governing authorities." Greenwood has an ordinance which essentially tracks the statute and provides further that the appropriate department head must bring the claim, properly docketed, before the Council for approval.
It is obvious that this system is incompatible with the division of legislative and executive power as we perceived it in Alexander. It is just as obvious, however, that in reading the plain words of the statute the conclusion cannot be avoided that action on claims is contemplated at each "regular meeting" of the governing authorities. Mayors do not meet with themselves, regularly or otherwise.[4]
In Miss. Code Ann. § 21-8-43 (1972), the legislature provided that all statutes in conflict with the mayor-council form of government are "repealed" upon a city's adopting that form. The clear intent is that the mayor-council scheme should take precedence over contrary provisions. Unfortunately, the mayor-council scheme provides no explicit directions for the handling of claims. The positive command of the claims docket statute which speaks to the prompt payment of claims is simply not addressed by the mayor-council legislative scheme. Nor is it addressed by any duly adopted ordinance of the city purporting to give effect to the mayor-council separation of powers goal.
*759 While it is true that the expenditure of funds within the approved budget, appropriation, and general fiscal management legislation is normally an executive function, it is not at all clear that we can ignore the command of the statute to present claims to each "regular meeting." On this record, we are not at liberty to disturb the ruling of the chancellor declining injunctive relief. It is sufficient to say that an annual or other periodic appropriations process would seem to comport with the governance scheme envisioned by the mayor-council plan. That said, however, the chancellor's conclusion that the claims docket process is an insufficient incursion into the executive domain to warrant court proscription must be affirmed in view of the ambiguities presented by the statutory provisions at hand.

CONCLUSION
For the foregoing reasons the judgment of the chancery court is reversed and rendered as to the appointment power. Subjecting appointments of certain officers to some form of legislative approval comports with general notions of separation of powers. The judgment of the chancery court is affirmed with respect to the budgetary/expenditure process.
REVERSED AND RENDERED ON DIRECT APPEAL.
PRATHER, P.J., and JAMES L. ROBERTS, Jr., J., concur.
PITTMAN, J., concurs in result with separate written opinion joined by SULLIVAN, P.J.
DAN M. LEE, C.J., dissents with separate written opinion joined by McRAE and SMITH, JJ.
AFFIRMED ON CROSS-APPEAL.
DAN M. LEE, C.J., PRATHER, P.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
PITTMAN, J., dissents with separate written opinion joined by SULLIVAN, P.J., and McRAE, J.
MILLS, J., not participating.
DAN M. LEE, Chief Justice, concurring in part and dissenting in part:
I concur with the majority's decision to affirm the chancellor's ruling that the "claims docket" method of handling municipal expenditures is statutorily required. However, the majority opinion gives the city council the unbridled power to amend its governing statutes at will and in the process nullify positive Mississippi statutory law which requires that the mayor exercise the executive power and the city council exercise the legislative power in the mayor-council form of municipal government. I find no legal authority, constitutional, statutory or case law, that allows the city council in a mayor-council form of government to usurp the mayor's power to appoint the city attorney, city judge and city prosecutor. The practical effect of today's majority opinion is that a city council in the mayor-council form of municipal government will be able to withhold its self-proclaimed power of "advice and consent" over the mayor's appointments until the mayor relents and appoints the city attorney, city judge and city prosecutor selected by a majority of the city council. This effectively strips the mayor of his statutorily vested executive power to appoint the city attorney, city judge and city prosecutor. Further, I believe that today's majority opinion will lead to a waste of judicial resources through repeated trips to court by disgruntled mayors and city councils litigating whether or not the city council is wrongfully withholding its newly appropriated power of consent as to mayoral appointments for city attorney, city judge and city prosecutor. Accordingly, I concur in part and respectfully dissent in part.

FACTS

I.
Since July 1, 1985, the city of Greenwood has operated under the mayor-council form of municipal government. See Miss. Code Ann. § 21-8-1 et seq. This type of municipal government, being one of the five legislatively created forms of city government, is sometimes called "strong mayor, weak council" form of government. The current *760 Greenwood city government is composed of the office of mayor and seven city council members. Prior to July 1, 1985, Greenwood operated under the commission form of municipal government which consisted of a mayor and two commissioners. See Miss. Code Ann. § 21-5-1 et seq.
In 1985, Louis E. Fancher was elected Mayor of the City of Greenwood under the new mayor-council form of government. Fancher was reelected to serve a second term as Mayor in 1989. During the period from 1985 until 1991 the appointments of city attorney, city judge and city prosecutor were appointed annually.
In June of 1991, the Greenwood City Council informed Mayor Fancher that it would not approve Lee Abraham, Jr., to serve another term as city attorney. Fancher, advised of this development, appointed another Greenwood attorney to serve as city attorney. Meanwhile, Greenwood City Council President Dr. Joseph Curtis (hereinafter "Curtis") delivered a letter to Mayor Fancher submitting the appointment of yet another Greenwood attorney as city attorney. In addition to this name, Curtis submitted a complete listing of other names chosen by the Council for the municipal court positions.
Lee Abraham, Jr., the embattled incumbent city attorney, served until he resigned on August 27, 1991. Thereafter, Fancher approached Luke Schissel and inquired as to whether he would accept the job as city attorney if it were offered to him. Schissel indicated that he would take the job if he were appointed. Then, at its September 10, 1991, meeting the City Council, by way of a 4-2 vote, passed a resolution appointing Willie Perkins as city attorney. Fancher, by executive order, appointed Luke Schissel as city attorney, without the City Council's confirmation. The City Council, in response to Fancher's executive order, passed by another 4-2 vote a resolution declaring Fancher's previous executive order null and void. Fancher vetoed both of the Council's resolutions and filed suit in the Leflore County Chancery Court the following day seeking declaratory and injunctive relief.
Before the Mayor's suit could be heard in the Leflore County Chancery Court, four of the City Council members filed suit in the United States District Court for the Northern District of Mississippi, invoking the district court's federal question jurisdiction.[1] In response to the City Council members' action, the Mayor filed a motion to remand this case to state court.
Ultimately, the two federal actions were consolidated, and on September 30, 1991, a hearing was held before Federal District Court Judge Glen Davidson (hereinafter "Davidson") on the four Council members' motion for a preliminary injunction and their request for the convening of a three-judge panel, and on the Mayor's motion to remand the case to state court. On October 3, 1991, Davidson denied the four Council members' request for a preliminary injunction and convened a three-judge panel to determine whether the Mayor's actions constituted a change under § 5 of the Voting Rights Act of 1965.
On November 5, 1991, the three-judge panel issued its Memorandum Opinion and Order, holding that no change under § 5 of the Voting Rights Act of 1965 had occurred, dissolving the panel, and remanding the case to the Leflore County Chancery Court for a determination of the respective authority of the Mayor and City Council as to the power of appointment of the city attorney and municipal court personnel.
The Mayor's application for a temporary restraining order authorizing him to hire Schissel as city attorney was set for hearing on November 8, 1991. After hearing argument from the Mayor and from the City Council, the Leflore County Chancery Court granted Fancher's request for a temporary restraining order on November 11, 1991. This temporary restraining order allowed Fancher to hire Schissel as the city attorney until December 31, 1991.
A final hearing on the matter was set for December 8, 1991, and then reset for December 11, 1991. Subsequently, the parties entered into a stipulation concerning certain *761 facts and issues and, thus, no further testimony was deemed necessary. Thereafter, both sides submitted briefs on the issues and on February 7, 1992, the Chancellor issued his opinion.
In his opinion, the Chancellor found that under Mississippi's mayor-council form of government the Mayor has the exclusive power and authority to employ the city attorney, the municipal court judge, the municipal court prosecutor and defender, and the municipal court prosecutor for housing code violations. The Chancellor also found that the Mayor's actions in this matter did not constitute a "change" for purposes of § 5 of the Voting Rights Act of 1965.
However, the Chancellor also found that processing and payment of the City claims through a claims docket maintained and voted on by the City Council did not conflict or violate the executive powers of the Mayor. The Chancellor, relying on Miss. Code Ann. § 21-35-17, ruled that there was no infringement upon the Mayor's executive powers when the Council votes on claims before payment. The Chancellor reasoned that the claims docket is basically an accounting and auditing process. Thus, the Chancellor held that the claims docket did not conflict with the Mayor's executive powers. Also, because the Legislature established the claims docket procedure to be utilized by all forms of city government, the Chancellor held that the claims docket process was mechanical and should be used only as a method by which the city ensures that it does not spend in excess of its budget.
From this ruling both parties appealed, the Council appealing the appointment power ruling and the Mayor cross-appealing the claims docket ruling.

DISCUSSION

II.

A.
The Greenwood City Council contends that under the mayor-council form of municipal government, the mayor does not have the exclusive power to appoint the city attorney and other municipal court officers. The Council argues that the Mississippi Legislature did not intend the term "governing authorities" in the mayor-council form of government to mean sole mayoral authority to the exclusion of the council but, rather, that the only proper reading of that term is inclusive of all entities of governance of municipalities. Therefore, the Council argues, the ordinance passed by it does not offend the current mayor-council statutory scheme and the Chancellor's decision overturning the validity of the Council's ordinance should be reversed.
Mississippi currently has five separate schemes of municipal government.[2] Each form of municipal government provides, to some degree, for different powers and duties of the mayor and council and or board of aldermen. Greenwood has adopted the mayor-council form of government pursuant to Miss. Code Ann. § 21-8-1 et seq., and this opinion is germane only to those municipalities that have adopted the mayor-council form of government.
Our analysis should begin by recognizing that municipalities have only such powers as are granted them by their charter and the statutes. Peterson v. City of McComb City, 504 So.2d 208, 209 (Miss. 1987); Delta Electric Power Association v. Mississippi Power & Light Co., 250 Miss. 482, 510, 149 So.2d 504, 513 (1963); City of Jackson v. Freeman-Howie, Inc., 239 Miss. 84, 93, 121 So.2d 120 (1960). The issue before this Court on appeal is who has the authority in a mayor-council form of government to appoint the city attorney, city judge and city prosecutor? If we find that the statutes allow for the mayor alone in the mayor-council form of government to appoint these positions, we must then also determine whether the statutes relevant to the appointment of these positions allow for the city council to enact ordinances, resolutions, or orders requiring *762 that the mayor seek the council's "advice and consent" as to these selections.
Both parties recognize that Miss. Code Ann. § 21-8-1 et seq. (1972) is silent as to the procedures to be employed in appointing the city attorney, city judge, city prosecutor, city public defender and city building code prosecutor. Accordingly, we must look to the general statutes dealing with the municipalities for guidance. The parties direct our attention to Miss. Code Ann. § 21-15-25 and Miss. Code Ann. § 21-23-3 and offer well-developed argument on both sides to support their positions.
Miss. Code Ann. § 21-15-25 et seq. and Miss. Code Ann. § 21-23-3 et seq. are part of the general laws dealing with the operation of municipal government, whatever the particular form. Section 21-15-25 entitled "Municipal attorney; appointment and compensation" provides in relevant part:
The governing authorities may annually appoint an attorney-at-law for the municipality, prescribe his duties and fix his compensation, and/or they may employ counsel to represent the interest of the municipality, should the occasion require.
Alternatively, section 21-23-3 titled "Appointment of municipal judge and prosecuting attorney in certain municipalities" provides:
In all municipalities having a population of ten thousand (10,000) or more, according to the latest available federal census, there shall be a municipal judge and a prosecuting attorney, both of whom shall be appointed by the governing authorities of the municipality at the time provided for the appointment of other officers.
Neither section 21-15-25 nor section 21-23-3 defines "governing authorities," nor does either section contain language mandating the selections be made upon the "advice and consent" of the council or mayor. The problem thus becomes who are the "governing authorities" for purposes of appointing the city attorney, city judge and city prosecuting attorney? To determine who the "governing authorities" are for the sake of Miss. Code Ann. § 21-15-25 and Miss. Code Ann. § 21-23-3, we must look to the five specific statutes dealing with the separate forms of municipal government to determine who is vested with the statutory authority to appoint the city attorney, city judge, city prosecutor and city public defender. See, e.g., Aikerson v. State, 274 So.2d 124 (Miss. 1973) (when attempting to determine intent of legislature, all of the statutes enacted on the same subject must be construed together, so as to indicate the legislative policy as a whole).
As mentioned previously, the five statutory forms of municipal government allocate the powers and responsibilities between the mayor and council or board of aldermen in somewhat different schemes. For example, the commission form of municipal government provides by specific statute that the council has executive, judicial and legislative power, See, e.g., Miss. Code Ann. § 21-5-9 (1972), while the council-manager form of government provides by specific statute that the mayor and council shall exercise the executive, legislative and judicial powers. See Miss. Code Ann. § 21-9-35 (1972).
Upon reviewing the mayor-council governing statutes we find that "[t]he executive power of the municipality shall be exercised by the mayor." See Miss. Code Ann. § 21-8-15. Further, we note that Miss. Code Ann. § 21-8-9 provides that "[t]he legislative power of the municipality shall be exercised by the municipal council, except as may be otherwise provided by general law." In Van Slyke v. Board of Trustees, 613 So.2d 872, 879 (Miss. 1993), this Court quoted with approval Alexander v. Allain, 441 So.2d 1329, 1338 (Miss. 1983), for its succinct definition of "executive power" and for its distinction between executive and legislative powers. We defined executive power as:
... the power to administer and enforce the laws as enacted by the legislature and interpreted by the courts. Execution is at the core of executive power. We also find pertinent the following distinction: "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." (Emphasis added) (Citations omitted).
Van Slyke, 613 So.2d at 879.
Clearly, in the case sub judice, the Mayor of the City of Greenwood has been statutorily *763 vested with the right to exercise executive power, and as Van Slyke and Alexander recognize, the right to "appoint the agents charged with the duty of such enforcement" is an executive function. In light of the fact that the right to appoint agents charged with the duty of enforcement of the laws is an executive function, and in light of the fact that Miss. Code Ann. § 21-8-9 vests the City Council of Greenwood with the right to exercise "legislative power" but not "executive power," the Council cannot successfully argue that the general provisions of Section 21-15-25 and Section 21-23-3 give it the power to appoint the city attorney, city judge or city prosecutor. This conclusion is buttressed by Miss. Code Ann. § 21-8-27, which provides:
The members of the council shall not direct or dictate the appointment of any person to or his removal from office by the mayor or any department directors. Except for the purposes of inquiring or receiving information or advice, the council shall deal with the municipal departments and personnel solely through the mayor and no member of the council shall give orders to any subordinate of the municipality. The council shall have the power to investigate any part of the municipal government and for that purpose to compel the attendance of witnesses and the production of documents and other evidence.
(Emphasis added). Miss. Code Ann. § 21-8-27 clearly prevents the city council from appointing anyone to fill the disputed positions. Likewise, this same statute prevents the city council from forcing a mayor or department head to hire or fire certain office holders or employees.
In the case sub judice, on September 10, 1991, the Greenwood City Council initiated and then passed a resolution purporting to hire Willie Perkins as Greenwood City Attorney. This action by the Greenwood City Council was an obvious violation of Miss. Code Ann. § 21-8-27 and therefore was invalid.
Accordingly, for the purposes of Miss. Code Ann. § 21-8-1 et seq., Miss. Code Ann. § 21-15-25, and Miss. Code Ann. § 21-23-3, the "governing authorities" entitled to appoint the city attorney, city judge and city prosecuting attorney refer to the mayor alone. Any attempt by the city council to appoint these positions is an impermissible exercise of executive power not granted it under Miss. Code Ann. § 21-8-1 et seq.

B.
Having decided that the mayor in the mayor-council form of municipal government has the sole statutory authority to appoint the city attorney, city judge and city prosecutor, we must address whether the city council can enact an ordinance, resolution or order requiring that the mayor seek the city council's "advice and consent" as to his selections for the above named positions. As was noted previously in this opinion, neither Miss. Code Ann. § 21-15-25 nor Miss. Code Ann. § 21-23-3 specifically address this issue.
On appeal, the Council argues that certain sections of the mayor-council statutory scheme require that the mayor seek the council's advice and consent on certain appointments. For example, Miss. Code Ann. § 21-8-23(2) requires that the mayor gain confirmation by the city council confirmation of his departmental directors and members of any "board, authority or commission" he may appoint. Likewise, should the city elect to have a chief administrative officer, the mayor must seek the city council's advice and consent as to his selection. See Miss. Code Ann. § 21-8-25. On the other hand, however, Miss. Code Ann. § 21-8-35 allows the mayor to appoint the police justice as well as all other municipal employees without providing any such provision for council confirmation of these positions.
The City Council of Greenwood argues that because these previously discussed statutes, i.e., Miss. Code Ann. § 21-8-23 and Miss. Code Ann. § 21-8-25, provide for council confirmation of the mayor's selections, then Miss. Code Ann. § 21-15-25 and Miss. Code Ann. § 21-23-3 must, by implication, also provide for council confirmation of the mayor's selections to fill the jobs of city *764 attorney, city judge and city prosecutor.[3] I disagree. In City of Jackson v. Freeman-Howie, Inc., 239 Miss. 84, 93-94, 121 So.2d 120 (1960), this Court held:
Municipalities have only such powers as are granted them by their charter and the statutes. Such powers are to be construed most strongly against an asserted right not clearly given, and they cannot be extended by mere implication. Crittenden v. Booneville, 92 Miss. 277, 45 So. 723; Town of Clinton v. Turner, 95 Miss. 594, 52 So. 261; Wise v. Yazoo City, 96 Miss. 507, 51 So. 453, 26 L.R.A., N.S. 1130, Ann.Cas. 1912B 377; City of Hazlehurst v. Mayes, 96 Miss. 656, 51 So. 890; Steitenroth, et al. v. City of Jackson, 99 Miss. 354, 54 So. 955; Knight v. Johns, 161 Miss. 519, 137 So. 509; Seward v. City of Jackson, 165 Miss. 478, 144 So. 686; Martin v. First National Bank of Hattiesburg, 176 Miss. 338, 164 So. 896; City of Natchez v. Engle, et al., 211 Miss. 380, 49 So.2d 808; Alexander v. Edwards, 220 Miss. 699, 71 So.2d 785.
(Emphasis added).
The majority opinion incorrectly likens the Greenwood City Council's ordinance conferring upon itself the power of "advice and consent" to that of the power of "advice and consent" bestowed upon the United States Senate. It is certainly true that the United States Senate has the authority to give its "advice and consent" as to the president's cabinet level appointments and judicial appointments. However, we must note that unlike the ordinance enacted by the City Council of Greenwood, the right of "advice and consent" is explicitly granted to the United States Senate and is firmly enshrined in the Constitution of the United States of America. See, e.g., U.S. Const. art. II, § II, cl. 2. A review of our own Constitution reveals no specific grant of such power to the city council nor do the applicable statutes give the city council the power to craft such an ordinance vesting in itself the power of "advice and consent."
Accordingly, because a municipality such as Greenwood only has such power as is granted to it by its charter and the statutes, and because such powers are to be construed most strongly against an asserted right not clearly given, and because asserted rights not explicitly given cannot be extended by mere implication, I would hold that the City Council was without the authority to enact any binding ordinance, order or resolution requiring that the mayor seek the city council's advice and consent when selecting the city attorney, city judge and city prosecuting attorney. City of Jackson v. Freeman-Howie, Inc., 239 Miss. 84, 93-94, 121 So.2d 120 (1960). While the City Council of Greenwood may have the power of "advice and consent" as to certain statutorily enumerated matters, and while the power of "advice and consent" may historically be a legislative power, the Greenwood City Council was without the authority, constitutional or statutory, to enact such an ordinance clothing itself with authority not explicitly granted it.

CONCLUSION
The author of today's majority, writing in dissent in a recent case involving statutory interpretation, recognized that although a decision of this Court might "suit the legislative policy expressed by the statute," it is the Legislature's province and not this Court's to establish legislative policy. Ford v. Holly Springs School District, 665 So.2d 840, 850 (Miss. 1995) (Banks, J., dissenting). Thus, while today's majority decision to allow the city council to enact ordinances requiring the mayor gain the council's consent for city attorney, city judge and city prosecutor appointments might "suit the legislative policy expressed by the statute[s]," it is the Legislature's role and not this Court's to establish legislative policy. If the Legislature wishes to give city councils under the mayor-council form of municipal government the power of advice and consent over the mayor's city attorney, city judge and city prosecutor appointments *765 it can do so through duly enacted amendments to the relevant statutes. Accordingly, for the foregoing reasons the judgment of the Leflore County Chancery Court should be affirmed.
SMITH, J., joins this opinion.
McRAE, J., joins this opinion in part.
PITTMAN, Justice, concurring in part and dissenting in part:
I am of the opinion that under the mayor-council form of government it is exclusively the mayor's prerogative to make appointments not specifically prescribed by statute. The city attorney's appointment is not addressed in the statutes governing a mayor-council form of municipal government. But, as the majority points out, the Code provides a general statute mandating that the "governing authorities" make this appointment. See Miss. Code Ann. § 21-23-3 (1972). This Code section dealing with the aforementioned appointment is a general section for all five schemes of municipal government in Mississippi. In a mayor-council form the legislature has divided the powers of the "governing authorities." The council shall exercise the legislative power. Miss. Code Ann. § 21-8-9 (1972). The mayor shall exercise the executive power. Miss. Code Ann. § 21-8-15 (1972). We have held that appointments are a function of the executive branch, therefore, the mayor in a mayor-council form should make the appointment. Van Slyke v. Board of Trustees, 613 So.2d 872, 879 (Miss. 1993) (citing Alexander v. Allain, 441 So.2d 1329, 1338 (Miss. 1983)).
The council, however, has the power to enact ordinances that are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any statute or law of the State of Mississippi. Miss. Code Ann. § 21-17-5 (1972). Prior to adopting the mayor-council form of government[1], Greenwood had enacted an ordinance requiring confirmation by a majority of the commission of the mayoral appointment of a city attorney. While Greenwood was operating under the mayor-council form of government, an ordinance was passed to carry forward the aforementioned ordinance requiring a majority of the council to confirm the mayor's appointment of a city attorney. Although the statute vests the executive power in the mayor and thus the appointment power, an advise and consent ordinance does not in any way violate a State statute or the State Constitution. Greenwood, by it's own acts, properly adopted such an ordinance in 1989 and now must abide by it.
However, Miss. Code Ann. § 21-8-27 expressly prohibits the council from dictating or directing to the mayor the appointment of persons to office. The resolution on September 10, 1991, by the Greenwood City Council wherein it attempted to appoint a city attorney is clearly in violation of this statute and the statute vesting executive power in the mayor. Confirmation must not be unduly withheld and as stated in the majority opinion, confirmation should be withheld only on the basis of good cause.
Furthermore, I am of the opinion that the mayor, in the mayor-council form of government, has the right to administer and expend the budget without interference from the Council and that the claims docket statute (Miss. Code Ann. § 21-39-9 (1972)) is contrary to the statutory mandate of § 21-8-15 that executive powers be vested in the mayor and to our holding in Alexander v. Allain, as regards the separation of powers doctrine stated in the MISS. CONST. art. 1, § 2.
Our holding in Alexander also states that once the taxes have been levied and appropriations made, the legislative duties end and executive responsibility begins to administer the appropriations. Alexander v. Allain, 441 So.2d 1329, 1338 (Miss. 1983). The claims docket statute allows legislative or city council influence in the administration of appropriations in violation of the separation of powers clause. The legislature has provided that all statutes in conflict with the mayor-council form of government are "repealed" upon a city's adoption of that form. See Miss. Code Ann. § 21-8-43 (1972). The claims docket statute should be set aside and *766 held for naught as it relates to the mayor-council form of government in the case sub judice. Additionally, it should be noted that at the end of each fiscal year the council shall cause a full and complete examination of all the books, accounts and vouchers to be made by an independent accountant. Miss. Code Ann. § 21-8-13(2) (Supp. 1995). This section prescribes the proper legislative responsibility of the city council in appropriations and expenditures, the responsibility of post audit.
The majority notes that the mayor-council scheme should take precedence over contrary provisions (like the claims docket statute), yet dismisses this accurate legal conclusion because the mayor-council scheme does not provide explicit directions, as the claims docket statute does, for the prompt payment of claims. In essence the majority opts for quick accounting procedures rather than a constitutional and statutorily correct application of the law.
The claims docket statute violates the doctrine of separation of powers. Article I, section 2 of the Mississippi Constitution of 1890 commands that no person exercising the powers delegated to one department may exercise any power associated with another department. We have applied this doctrine at the local level. See In re Anderson, 447 So.2d 1275, 1276 (Miss. 1984) (where the Court held that a justice court judge is a member of the judicial branch of the government and cannot simultaneously function as a law enforcement officer, who serves as an executive official.) The legislature has granted the executive power to the mayor and the legislative power to the city council in a mayor-council form of municipal government. In Alexander we held that the executive branch was charged with the task of administering the appropriations. Alexander, 441 So.2d at 1338. The claims docket statute oversteps the legislative power of the city council.
Therefore, I dissent as to the majority opinion's affirmance of the claims docket statute.
SULLIVAN, P.J., joins this opinion.
McRAE, J., joins this opinion in part.
SMITH, J., joins this opinion in part as to the claims docket issue.
NOTES
[1] The case referred to was disposed of by this Court. Gaddy v. Bucklew, 580 So.2d 1180 (Miss. 1990). The Gaddy decision dismissed the appeal for lack of standing. It did not reach the merits of the issue. In Gaddy, the mayor of Laurel, Mississippi brought an action for a declaratory judgment against the City Council, asking the Circuit Court to find that the statutes establishing the mayor-council form of government granted him exclusive authority to appoint the city attorney, municipal court judge and judge pro tempore and the public defender. The Circuit Court judge entered a judgment in favor of the mayor, some of the members of the City Council attempted an appeal to this Court. However, this Court dismissed the case because the appellants lacked standing for the reason that there was no vote by the Council to take an appeal in the name of the City Council. Thus, although the issue is identical to that in the case at bar, this Court did not resolve it. Gaddy, 580 So.2d at 1182 (Miss. 1990).
[2] As can be seen from a discussion of this case in note 1, this description of the action of this Court is erroneous.
[3] This code provision states in pertinent part that no claims can be approved or paid if it is excess of the detailed budget appropriations. Miss. Code Ann. § 21-35-17.
[4] It must be remembered here that we refer to Alexander as a guide to determining whether a particular function is executive or legislative for purposes of appropriately construing the statutory scheme. We do not apply Alexander to mandate separation of powers in the constitutional sense. Separation of powers that we treat here with regard to the mayor council form of government is of statutory not constitutional origin. Were that not so, the prohibition against the claims docket mechanism urged by my brother Pittman in his dissent would apply equally to all forms of municipal government. That dissent does not cite nor has the writer found an instance in which the constitutional doctrine of separation of powers has ever been applied to municipal government. On the contrary, the code is replete with instances wherein governmental functions are merged at that level. See In re Grant, 631 So.2d 758, 763 (Miss. 1994); Ball v. Fitzpatrick, 602 So.2d 873, 877-879 (Miss. 1992) (Banks, J., concurring); Broadus v. State ex rel. Cowan, 132 Miss. 828, 96 So. 745 (1923).
[1] The four Council members filed a second lawsuit in the federal district court alleging that the Mayor's actions violated § 5 of the Voting Rights Act of 1965.
[2] These being: (1) Miss. Code Ann. § 21-3-1 et seq. (1972) (Code Charters); (2) Miss. Code Ann. § 21-5-1 et seq. (1972) (Commission Form); (3) Miss. Code Ann. § 21-7-1 et seq. (1972) (Council Form); (4) Miss. Code Ann. § 21-8-1 et seq. (1972) (Mayor/Council); and Miss. Code Ann. § 21-9-1 et seq. (1972) (Council/Manager).
[3] Mayoral appointments made under Sections 21-8-23 and 21-8-25, and subject to council confirmation, are not subject to appointment every year as are the appointments enumerated in Sections 21-15-25 and 21-23-3. It is entirely possible that the legislature decided against allowing for council confirmation on these annual appointive positions to prevent a yearly impasse between the mayor and council.
[1] Greenwood operated under the Commission form of municipal government prior to July 1, 1985. See Miss. Code Ann. §§ 21-5-1 through 21-5-23 (1972).