Robert Hecht Shawnee County District Attorney Third Judicial District Shawnee County Courthouse, 200 SE 7th Street Second Floor, Suite 214 Topeka, Kansas 66603
Dear Mr. Hecht:
You inquire whether a recently enacted statute establishing a procedure for city governing body consideration of a mayoral appointment requires the body, if it rejects the appointment, to provide a reasonwhy a candidate is either unqualified or unfit to hold the position or whether it suffices for the body to simply determine that the candidate is unqualified or unfit. The statute in question provides, in part:
 "Any appointment to any board, commission, advisory group or other body made by the mayor of any city which is subject to approval of the governing body of the city must be acted upon by the governing body within 45 days of the appointment by the mayor or the appointment shall be deemed approved. The governing body of the city shall approve such appointment unless the governing body makes a specific finding by the passage of a resolution that the person is either unqualified to hold the office or is not fit to hold the office or position."[1]
The responsibility of initiating appointment to local boards lies generally with the mayor.[2] The usual verbiage provides that "the mayor, by and with the consent of the council, may appoint. . . ."[3]
Should the governing body fail to act upon the proposed appointment, the incumbent continues to serve in the position, thus creating a "holdover" situation. This scenario can cause friction between a mayor and a governing body.
Apparently, this situation is not uncommon, having been the subject of at least one appellate court decision[4] and three Attorney General opinions.[5] In Attorney General Opinion No. 79-282, Attorney General Robert T. Stephan considered a library board reappointment and a city council's refusal to approve anyone but the incumbent.
Finding the situation "undesirable," General Stephan concluded that while at least one ouster proceeding had been successfully prosecuted against city council members who refused to confirm mayoral appointments, [6] the case in point involved a willful and persistent failure to perform official duties. In the absence of such evidence, General Stephan concluded that no remedy existed "save that of persuasion and mediation."
In order to create a remedy for situations where persuasion and mediation were unavailing, the Legislature enacted the above-referenced statute.
The well-settled starting point for interpreting a statute is to look at what the legislature actually said by reading the words of the statute and ascribing ordinary meanings to ordinary words:[7]
 "When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it."[8]
It is our opinion that the statute is clear and unambiguous. The statute deems a mayoral appointment approved unless a governing body takes formal action to reject such appointment by determining that the candidate is either unqualified or not fit to hold the particular office or position. To interpret the statute as requiring a governing body to provide a basis for its determination would be adding something not readily found.[9]
We also note that the impetus for this legislation arose from a situation where a mayor refused to reappoint a member of the library board and presented another candidate to the council for approval.[10]
Some council members refused to approve the mayor's choice — not because the mayor's candidate was unfit or not qualified — but simply because they wanted to retain the incumbent.[11]
While we believe that the plain language of the statute requires only a determination that the candidate is either unfit or not qualified, the legislative history supports this conclusion as well.[12] Had the legislature wanted the governing body to elucidate its rationale for rejecting a candidate on grounds of unfitness, appropriate verbiage could have been crafted.
Accordingly, it is our opinion that a governing body that rejects a mayoral appointment must simply make a determination that the candidate is either not fit or is unqualified to hold the office or position.
Sincerely,
 Steve Six Attorney General
 Mary Feighny Deputy Attorney General
SS:MF:jm
[1] L. 2008, Ch. 163, § 4. Emphasis added.
[2] K.S.A. 2007 Supp. 12-1222, 12-5711, K.S.A. 13-527, 14-201, 14-695,15-201, 15-204, 17-4757. (These statutes were amended at L. 2008, Ch. 163, §§ 5,6,8,10,11,12,13, and 14 to reflect the appointment rejection process in § 4.)
[3] Id.
[4] State ex rel. Dawson v. Lander, 87 Kan. 474 (1912).
[5] Attorney General Opinion No. 80-142, 79-282, 79-101.
[6] State ex rel. Dawson v. Lander, 87 Kan. 474 (1912). Ouster granted in State ex rel. Dawson v. Lander, 89 Kan. 178 (1913).
[7] Manley v. City of Shawnee, No. 99,155 (Kansas Supreme Court, filed October 17, 2008).
[8] State v. Robinson, 281 Kan. 538, 539-40 (2006).
[9] State v. Haug, 237 Kan. 390, 391-92 (1985).
[10] Minutes, Senate Elections Local Government, March 12, 2008, Attachment 2, 4.
[11] Id.
[12] Id. See Minutes, House Elections Governmental Organization, February 4, 2008. We also note that the supplemental note to the original house bill, 2008 H.B. 2648. Supplemental Note on House Bill 2648, as amended by House Committee on Elections and Government Organization. See also Conference Committee Report Brief on House Bill 2217.